MIKE ROSELAND ET AL., APPELLEES AND CROSS-APPELLANTS,
v. STRATEGIC STAFF MANAGEMENT, INC.,
APPELLANT AND CROSS-APPELLEE.

722 N.W.2d 499

Filed October 20, 2006.   No. S-04-627.

Jeffrey A. Silver for appellant.

Mary L. Hewitt, of McGill, Gotsdiner, Workman & Lepp, P.C., L.L.O., for appellees.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The Douglas County District Court determined that four former employees of Strategic Staff Management, Inc. (Strategic), were entitled to compensation for accrued but unused vacation time upon their voluntary resignations. The district court also awarded the employees attorney fees. The Nebraska Court of Appeals concluded that the district court had erred in awarding the compensation and the attorney fees. See *Roseland v. Strategic Staff Mgmt.*, 14 Neb. App. 434, 708 N.W.2d 841 (2006). We granted the employees' petition for further review.

## SCOPE OF REVIEW

■ Statutory interpretation presents a question of law in which an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262 (2006).

## FACTS

Mike Roseland, Tim Brotzki, Tom Lentz, and Loyce Meister (collectively referred to as "the employees") are former employees of Strategic who each resigned voluntarily during the summer of 1998. At the time of their resignations, Roseland and Brotzki each had 3 weeks of accrued vacation, Meister had 2 weeks, and Lentz had 1 week. In March 2000, each of the employees sent a letter to Strategic demanding payment for his unused vacation time, but Strategic refused to make payment.

In April 2000, the employees commenced this action pursuant to the Nebraska Wage Payment and Collection Act (Wage Act), Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 1998). They sought wages, attorney fees, and additional relief available pursuant to the Wage Act, including payment to a fund to be distributed to the common schools of this state (which we will

refer to as "the common schools fund"). The matter was eventually submitted to the district court upon a stipulation of facts. Among the exhibits received into evidence was Strategic's employee handbook, which provided for paid vacation for full-time employees depending upon the length of their employment. After 1 year of continuous service, employees were eligible for 1 week of paid vacation. After 2 years, they were eligible for 2 weeks of paid vacation, and after 5 years of continuous service, they were eligible for 3 weeks of paid vacation. However, the handbook stated, "Upon termination, employees will not be paid for unused vacation time." (Emphasis in original.)

The district court found that Strategic's employee handbook directly conflicted with state law and was therefore void. It awarded the employees payment for their unused vacation time and attorney fees equal to 25 percent of the unpaid wages. The court found that there was a reasonable dispute as to whether wages were owed, and it declined to find that Strategic acted willfully. Therefore, the court did not order Strategic to pay an award to the common schools fund.

Strategic timely appealed to the Court of Appeals, which concluded that the district court had erred as a matter of law in awarding the employees compensation for their unused vacation time. The Court of Appeals reversed both the judgment in favor of the employees and the award of attorney fees. The employees filed a petition for further review, which we granted.

## ASSIGNMENTS OF ERROR

In summary, the employees claim that the Court of Appeals erred (1) in concluding that the employee handbook, as opposed to the Wage Act, controlled their entitlement to payment for earned and unused vacation upon termination of their employment and (2) in reversing the award of attorney fees. The employees also question the amount of attorney fees awarded and have preserved for our consideration the question of whether Strategic should be ordered to make payment to the common schools fund.

## ANALYSIS

The issue before us is the validity of the provision in Strategic's employee handbook which states: "Upon termination, employees

will <u>not be paid</u> for unused vacation time." (Emphasis in original.) In concluding that such provision was enforceable, the Court of Appeals relied upon our decision in *Professional Bus. Servs. v. Rosno*, 268 Neb. 99, 680 N.W.2d 176 (2004).

Our decision in *Rosno* is not decisive of the issue presented. *Rosno* concerned the enforceability of a noncompetition covenant in a professional employment agreement. Stephen Rosno, an employee of a separate accounting firm, performed the majority of the work in the tax practice area for Professional Business Service Co. (PBS). Eventually, PBS hired Rosno and the parties signed a professional employment agreement which, in addition to the noncompetition covenant, provided that Rosno would receive 3 weeks of paid vacation per year.

When Rosno left his employment with PBS, the company sued for breach of the noncompetition covenant. Rosno counterclaimed for unpaid vacation and sick leave. The trial court found that the covenant was unenforceable and also awarded Rosno payment for 32 hours of vacation and 72 hours of unused sick leave.

One of PBS' arguments on appeal was that the trial court erred in finding that Rosno was owed payment for unused vacation and sick leave. We affirmed the judgment of the trial court and concluded that although Rosno's employment agreement did not define an " 'employee benefit plan,' " the Wage Act defined " 'fringe benefits' " to include " 'sick and vacation leave plans . . . .' " *Professional Bus. Servs. v. Rosno*, 268 Neb. at 114, 680 N.W.2d at 187, quoting § 48-1229(3). Therefore, Rosno was entitled to receive payment for the vacation and sick leave. We did not address whether PBS' handbook conflicted with the Wage Act because the terms of the employee handbook permitted Rosno to receive compensation for earned but unused vacation and sick leave.

Our decision in *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997), is instructive in the case at bar. Brad Moore was employed as a personnel recruiter by Eggers Consulting Company, Inc. (Eggers), from May 1989 to August 1992. His duties included solicitation of, consultation with, and placement of employee prospects. In August 1989, Moore was asked to sign an employment agreement which provided that

employees would not compete with Eggers within a geographic area, namely the continental United States, for a specified time period of 1 year.

Moore left his employment with Eggers and, at the time of the litigation, was the sole proprietor of an executive recruiting firm which placed employees with data processing companies. Moore admitted that in the year after he left his employment with Eggers, he contacted companies he had dealt with while employed by Eggers. Moore sued Eggers for unpaid wages, and Eggers counterclaimed, alleging that Moore had violated the terms of the covenant not to compete between the parties.

In granting a partial summary judgment in favor of Moore, the trial court concluded that certain provisions of the employment agreement were overbroad and could not be enforced. Trial was then held on the issue of what commission was payable to Moore upon termination of his employment. The employment agreement at issue provided:

> "Employee shall be entitled only to those commissions which are due and payable on the final day of employment. A commission is due and payable upon collection of the fee from the client. No commission shall be paid to the Employee until such time as the client pays the commission and the Candidate begins employment. In the event of termination for any reason, the Employee shall not be entitled to any bonus, award, prize or other incentive payment which may be payable at any time after termination."

*Id.* at 405, 562 N.W.2d at 541. The trial court found that the above-stated provision of the employment agreement was void because it was against public policy, and the court awarded Moore commissions on placements he had made before he left Eggers' employment, finding the commissions to be wages, as defined by the Wage Act.

One issue raised on appeal was whether the employment agreement or the Wage Act controlled the payment of certain commissions after Moore's employment was terminated. The Wage Act provides in part:

> Wages shall mean compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met

by the employee, whether the amount is determined on a time, task, fee, commission, or other basis. Wages shall include commissions on all orders delivered and all orders on file with the employer at the time of termination of employment less any orders returned or canceled at the time suit is filed.

§ 48-1229(4).

We concluded that the Wage Act controlled the determination of what commissions were payable to Moore as wages defined by the Wage Act. We held that Eggers could not circumvent the statutory definition of wages via provisions in its employment agreement with Moore. We stated: "If an act is prohibited by statute, an agreement in violation of the statute is void." *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 406, 562 N.W.2d 534, 542 (1997).

In the case at bar, paid vacation was a part of the fringe benefits contained in the employment agreement between Strategic and the employees. The amount of paid vacation that regular full-time employees received increased with the length of their employment. The question presented to the district court was whether Strategic could, upon an employee's termination, refuse to pay the employee for vacation time that accrued prior to such termination. We conclude that Strategic cannot. We hold that accrued vacation time, which is part of an employment agreement, is due and payable as wages upon termination of employment.

Statutory interpretation presents a question of law in which an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262 (2006). Section 48-1229 stated in relevant part:

(3) Fringe benefits shall include sick and vacation leave plans, disability income protection plans, retirement, pension, or profit-sharing plans, health and accident benefit plans, and any other employee benefit plans or benefit programs regardless of whether the employee participates in such plans or programs; and

(4) Wages means compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been

  met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis.

Pursuant to the Wage Act, the payment of unpaid wages is mandatory. "Whenever an employer, other than a political subdivision, separates an employee from the payroll, the unpaid wages shall become due on the next regular payday or within two weeks of the date of termination, whichever is sooner." § 48-1230. Vacation leave, if provided by terms of the employment agreement between the employer and the employee, is a fringe benefit, which is included in the definition of wages under the Wage Act. See § 48-1229(3) and (4). Upon termination of his or her employment, an employee is entitled to payment for any accrued vacation time that is provided for in the employment agreement.

The district court correctly determined that Strategic's policy of not paying accrued vacation pay upon termination of employment directly conflicted with the provisions of the Wage Act. The payment of vacation pay was an "agreed to" benefit between Strategic and its employees, see § 48-1229(4), and Strategic could not circumvent the payment of wages that had accrued by refusing to disburse accrued vacation pay because employment had been terminated.

The parties stipulated to the amount of vacation time that had accrued for each of the employees prior to their termination. Pursuant to the Wage Act, payment was due on the next regular payday or within 2 weeks of termination, whichever was sooner. To the extent that Strategic's policy of refusing to compensate employees for accrued vacation time upon termination of their employment conflicted with the Wage Act, the policy was void and unenforceable. The district court's order granting judgment in favor of the employees in the amount of $8,788.29 was correct.

In their petition for further review, the employees also claim that the Court of Appeals erred in refusing to consider whether the circumstances warranted an award of attorney fees greater than the 25-percent statutory minimum and in failing to order Strategic to make payment to the common schools fund. See §§ 48-1231 and 48-1232. The district court had entered an award of attorney fees equal to 25 percent of the unpaid wages but declined to award any additional fees. The court also stated

.

that because there was a reasonable dispute as to whether wages were owed, it would not order Strategic to pay an amount equal to the judgment to the common schools fund. The Court of Appeals did not analyze the issues related to attorney fees or the common schools fund because it reversed the district court's judgment and award of attorney fees. We now affirm the district court's order of attorney fees and its denial of an award to the common schools fund.

The issue of attorney fees is governed by §§ 48-1231 and 48-1232. Section 48-1231 provides that if an employee secures a judgment for unpaid wages under the Wage Act, the employee is

> entitled to recover (1) the full amount of the judgment and all costs of such suit and (2) if such employee has employed an attorney in the case, an amount for attorney's fees assessed by the court, which fees shall not be less than twenty-five percent of the unpaid wages. If the cause is taken to an appellate court and the plaintiff recovers a judgment, the appellate court shall tax as costs in the action, to be paid to the plaintiff, an additional amount for attorney's fees in such appellate court, which fees shall not be less than twenty-five percent of the unpaid wages.

The employees established a claim for unpaid wages, and thus, they are entitled to attorney fees of not less than 25 percent of the unpaid wages under § 48-1231. However, the employees argue that they should receive a larger award because the employment policy in question clearly violated the Wage Act and Strategic's actions were clearly willful. We conclude the district court did not abuse its discretion in not awarding a fee greater than the minimum 25 percent of the judgment.

We next consider whether the district court erred in failing to order Strategic to pay an amount to the common schools fund pursuant to § 48-1232. Section 48-1232 provides that if an employee establishes a claim and secures judgment under § 48-1231,

> (1) [A]n amount equal to the judgment may be recovered from the employer; or (2) if the nonpayment of wages is found to be willful, an amount equal to two times the amount of unpaid wages shall be recovered from the employer. Any amount recovered pursuant to subdivision (1)

or (2) of this section shall be placed in a fund to be distributed to the common schools of this state.

■ Under § 48-1232, it is in the court's discretion whether to order an employer to pay to the common schools fund an amount equal to the judgment. *Kinney v. H.P. Smith Ford*, 266 Neb. 591, 667 N.W.2d 529 (2003). We stated in *Kinney* that because the payment provision is in the nature of a penalty, discretion should be exercised only where there is no reasonable dispute as to whether wages are owed or as to the amount of the wages. We held that the trial court had discretion to determine both whether to impose a penalty and the amount of any such penalty, subject to the limitations prescribed by statute. In that case, the trial court found no reasonable dispute as to the wage claim, and we held that the lower court properly exercised its discretion to order the penalty.

. Although the district court determined that Strategic's policy of refusing to pay employees for unused vacation time directly conflicted with state law and was void, the court also found that a reasonable dispute existed as to the fact the wages were owed, and it declined to order Strategic to pay an amount equal to the judgment to the common schools fund. We agree with these findings of the district court.

In *Morris v. Rochester Midland Corp.*, 259 Neb. 870, 612 N.W.2d 921 (2000), we affirmed an order declining a request to require an employer to pay an amount equal to or double the amount of the judgment to the common schools fund. We found there were factual issues as to whether an employee had procured contracts and, if he had, whether those contracts constituted orders on file. We stated, "Section 48-1232 should not be invoked where there is a reasonable dispute as to the fact that wages are owed or as to the amount of the wages." *Morris v. Rochester Midland Corp.*, 259 Neb. at 875, 612 N.W.2d at 925.

In the case at bar, there was a reasonable dispute concerning whether payment for unused vacation leave was due to the employees, and the district court did not abuse its discretion in determining that such a dispute existed.

## CONCLUSION

The provision in Strategic's handbook stating that employees shall not be paid for unused vacation leave upon termination

conflicts with state law and is void. The district court's order was correct, and the Court of Appeals erred in reversing it. The decision of the Court of Appeals is reversed, and the cause is remanded to the Court of Appeals with directions to affirm the judgment of the district court in all respects.

The employees have been required to argue in both the Court of Appeals and this court. We therefore award, in addition to the fees awarded in the district court, attorney fees equal to one-third of the judgment to reflect the appeal to the Court of Appeals and this court.

REVERSED AND REMANDED WITH DIRECTIONS.

HENDRY, C.J., not participating.