Duane E. Fisher, appellee, v. PayFlex
Systems USA, Inc., appellant.

Jason R. Norton, appellee, v. PayFlex
Systems USA, Inc., appellant.

___ N.W.2d ___

Filed May 3, 2013.    Nos. S-12-503, S-12-504.

1.  **Courts: Appeal and Error.** An appellate court reviews a county court's judgment for errors appearing on the record.
2.  **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3.  **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives that party the benefit of all reasonable inferences deducible from the evidence.
4.  **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
5.  **Statutes.** Statutory interpretation presents a question of law.
6.  **Statutes: Appeal and Error.** Absent a statutory indication to the contrary, an appellate court gives words in a statute their ordinary meaning.
7.  **Statutes: Legislature: Intent: Appeal and Error.** An appellate court will not look beyond a statute to determine the legislative intent when the words are plain, direct, or unambiguous.
8.  **Employer and Employee: Words and Phrases.** A "vacation" from work is ordinarily understood to mean a paid leave of absence granted to an employee for rest and relaxation.
9.  **Employer and Employee: Wages.** Paid vacation leave is not conditioned upon anything other than the employee's rendering services for the employer. And an employee may use his or her earned vacation leave for any personal reason without conditions, including for an illness or disability.
10. **Wages: Words and Phrases.** Paid sick leave is ordinarily understood to mean an employee's paid absence from work for illness or disability.
11. **Employer and Employee: Wages.** Under Neb. Rev. Stat. § 48-1229 (Reissue 2010), upon an employee's separation of employment, an employer may withhold payment for unused sick leave, but not unused vacation leave.
12. **Employer and Employee: Employment Contracts: Wages: Appeal and Error.** Under Neb. Rev. Stat. § 48-1229 (Reissue 2010), an appellate court will consider a payment a wage subject to the Wage Payment and Collection Act if (1) it is compensation for labor or services, (2) it was previously agreed to, and (3) all the conditions stipulated have been met.
13. **Statutes: Legislature: Intent.** In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain,

ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself.

14. **Statutes: Intent.** In construing a statute, a court looks to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served. A court must then reasonably or liberally construe the statute to achieve the statute's purpose, rather than construing it in a manner that defeats the statutory purpose.

15. **Statutes: Appeal and Error.** An appellate court does not consider a statute's clauses and phrases as detached and isolated expressions. Instead, the whole and every part of the statute must be considered in fixing the meaning of any of its parts.

16. ____: ____. An appellate court attempts to give effect to all parts of a statute and to avoid rejecting a word, clause, or sentence as superfluous or meaningless.

17. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.

18. **Statutes: Legislature: Intent: Appeal and Error.** An appellate court will reject a statutory interpretation that is contrary to a clear legislative intent.

19. ____: ____: ____: ____. An appellate court can examine an act's legislative history if a statute is ambiguous or requires interpretation.

20. **Statutes.** A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way.

21. **Employer and Employee: Wages.** Under Neb. Rev. Stat. § 48-1229 (Reissue 2010), an employee's earned "paid time off" hours that the employee has an absolute right to take for any purpose must be treated as earned vacation leave.

22. **Attorney Fees: Appeal and Error.** An appellate court reviews a court's award of attorney fees under Neb. Rev. Stat. § 48-1231 (Reissue 2010) for abuse of discretion.

23. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

24. **Attorney Fees.** To determine proper and reasonable attorney fees, a court must consider several factors: the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services.

Appeals from the District Court for Douglas County, Kimberly Miller Pankonin, Judge, on appeal thereto from the County Court for Douglas County, Marcena M. Hendrix, Judge. Judgments of District Court affirmed.

A. Stevenson Bogue and Ruth A. Horvatich, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellant.

Richard A. Drews, of Taylor, Peters & Drews, for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and CASSEL, JJ.

CONNOLLY, J.

## SUMMARY

PayFlex Systems USA, Inc. (PayFlex), appeals from the district court's judgments in these consolidated appeals from the county court. The district court affirmed the county court's summary judgment that required PayFlex to pay earned but unused "paid time off" (PTO) hours to the appellees, Duane E. Fisher and Jason R. Norton. The issue is whether Neb. Rev. Stat. § 48-1229 (Reissue 2010) of the Wage Payment and Collection Act (Wage Payment Act)[1] entitles an employee, upon separation of employment, to collect earned but unused PTO hours despite a provision in an employee manual that the employer will not pay them.

We affirm. Regardless of the label that PayFlex attached to its PTO hours, they were indistinguishable from earned vacation time under § 48-1229. Like earned vacation time, the appellees had an unconditional right to use their earned PTO hours for any purpose. Because the Wage Payment Act requires an employer to pay earned but unused vacation leave to an employee upon separation of employment, the district court correctly affirmed the county court's summary judgment that ordered PayFlex to pay the appellees their unused PTO benefits.

## BACKGROUND

Fisher and Norton both separated from their employment with PayFlex in July 2010. Fisher's hourly wage was $43.7019, and his PTO balance was 146.64 hours. Norton's hourly wage $32.1678, and his PTO balance was 120.14 hours. PayFlex had not agreed to pay the appellees their unused PTO hours and denied the appellees' demand for payment of these hours. PayFlex's employee manual set out its PTO rules

---

[1] See Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 2010).

and provided that PayFlex would not pay their employees for unused PTO hours:

> PayFlex has provided Paid Time Off (PTO) as one of the many ways in which to show appreciation for loyalty and continued service. PTO is available for regular, full-time employees and may be used for absences due to illness, vacation or personal concerns.
>
> PTO will accrue in each pay period of continuous employment; however, employees are not eligible to use any accrued PTO until the completion of 90 days of full time employment.
>
> . . . .
>
> PTO may not be taken before it is earned.
>
> Employees are encouraged to take their [PTO] as an opportunity for rest, relaxation and other personal time. In the event that an employee does not utilize all of the PTO during the anniversary year, carryover is allowed into the next anniversary year with a maximum of twenty-five (25) days (200 hours).
>
> All PTO leave must be approved by the department manager or supervisor. PTO requests for one (1) week or more shall be scheduled with approval of the department manager or supervisor at least fifteen (15) days before the time taken.
>
> <u>PTO will NOT be paid out upon separation of employment.</u> If any unused, accumulated PTO is taken prior to the separation date, an employee must work three (3) consecutive regularly, scheduled days immediately following the PTO days, in order to be paid for those PTO days used.

(Emphasis in original.)

A chart in the employee manual sets out the number of PTO hours that employees would earn per pay period and per year, depending upon their years of employment. For example, a 1-year employee would earn 120 PTO hours (15 days) per year, while employees who had worked for PayFlex 9 or more years would earn 200 PTO hours (25 days) per year.

The payroll manager stated that in her 11 years of employment, PayFlex had never provided separate vacation leave and

sick leave benefits. The vice president of human resources testified that employees, if they wished, could use all of their accrued PTO hours for vacation time. As employees used their PTO hours, PayFlex listed their paid-out hours as part of the employee's total earnings on their paycheck. PayFlex also provided up to 3 days of funeral leave for employees, which it did not deduct from their PTO hours.

After the county court consolidated these cases, both sides moved for summary judgment. The issue was whether a 2007 amendment to § 48-1229 permitted PayFlex to refuse to pay unused PTO benefits to separating employees even though the statute required it to pay unused vacation leave. PayFlex argued that PTO hours were a hybrid benefit that did not constitute vacation leave. The county court rejected that argument and sustained the appellees' motions for summary judgment. It concluded that accepting PayFlex's argument would allow it to deprive the appellees of an earned vacation benefit, contrary to the Legislature's intention in the Wage Payment Act. It later sustained the appellees' motion for attorney fees.

PayFlex appealed to the district court, which agreed with the appellees. It concluded that because PayFlex's hybrid benefit plan had created an ambiguity under the statute, the issue should be decided in favor of employees unless and until the Legislature changed the statute. In its judgment on appeal, the court stated that PayFlex's PTO plan,

> by its own definition, includes vacation leave. There is nothing in [PayFlex's] PTO program that designates or apportions its PTO to reflect a separate determination of earned vacation leave, and [PayFlex] admits that an employee could use all of his or her earned PTO for vacation leave. The Court therefore finds that all of the earned PTO credited to [the appellees] at the time of their separation from employment with [PayFlex] should be paid to the [appellees].

The court affirmed the county court's award of attorney fees and awarded the appellees additional attorney fees on appeal.

## ASSIGNMENTS OF ERROR

PayFlex assigns, restated and condensed, that the district court erred in (1) affirming the county court's summary judgment order, which determined that PayFlex's refusal to pay the appellees' unpaid PTO hours deprived them of an earned benefit that they were entitled to collect under § 48-1229(4); and (2) concluding that § 48-1229(4) did not permit PayFlex to refuse payment of accrued PTO hours because PTO is not earned but unused vacation; and (3) affirming the county court's awards of attorney fees and awarding them additional attorney fees.

## STANDARD OF REVIEW

[1-5] We review a county court's judgment for errors appearing on the record.[2] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3] In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment is granted and give that party the benefit of all reasonable inferences deducible from the evidence.[4] But we independently review questions of law decided by a lower court.[5] Statutory interpretation presents a question of law.[6]

## ANALYSIS

Both parties agree that the plain language of § 48-1229(4) requires employers to pay earned but unused vacation leave to a separating employee. But they disagree whether PTO hours constitute vacation leave.

Section 48-1230(3)(a) requires employers to pay unpaid wages to an employee upon the employee's separation of

---

[2] See *Schinnerer v. Nebraska Diamond Sales Co.*, 278 Neb. 194, 769 N.W.2d 350 (2009).

[3] *Id.*

[4] See *Green v. Box Butte General Hosp.*, 284 Neb. 243, 818 N.W.2d 589 (2012).

[5] *Molczyk v. Molczyk, ante* p. 96, 825 N.W.2d 435 (2013).

[6] *Id.*

employment: "Whenever an employer, other than a political subdivision, separates an employee from the payroll, the unpaid wages shall become due on the next regular payday or within two weeks of the date of termination, whichever is sooner[.]"

Section 48-1229(4) defines "wages" to include fringe benefits: "Wages means compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis." And § 48-1229(3) defines "fringe benefits" to include "sick and vacation leave plans, disability income protection plans, retirement, pension, or profit-sharing plans, health and accident benefit plans, and any other employee benefit plans of benefit programs regardless of whether the employee participates in such plans or programs."

In 2007, however, the Legislature amended the definition of wages under § 48-1229(4) to include a limitation that is at issue here:

> Paid leave, other than earned but unused vacation leave, provided as a fringe benefit by the employer shall not be included in the wages due and payable at the time of separation, unless the employer and the employee or the employer and the collective-bargaining representative have specifically agreed otherwise.[7]

PayFlex contends that under the plain language of the amended § 48-1229(4), unused PTO hours are not unused vacation leave that must be paid to an employee upon separation of employment. It also argues that the county court's determination is contrary to the legislative history of the 2007 amendment.

The appellees contend that because an employee can use earned PTO hours the same as earned vacation hours, PTO hours are an earned benefit—not a contingent benefit—which an employer must treat as wages. They argue that the label cannot control whether an employer has a duty to pay unused

---

[7] See 2007 Neb. Laws, L.B. 255.

vacation leave. And they argue that if we conclude PTO hours are not vacation leave, employers can circumvent their statutory duty to pay unused vacation leave by combining sick leave with vacation leave. Finally, they argue that the legislative history confirms that their position is correct.

[6,7] Absent a statutory indication to the contrary, we give words in a statute their ordinary meaning.[8] We will not look beyond a statute to determine the legislative intent when the words are plain, direct, or unambiguous.[9] So we first consider the plain language of the statute.

[8,9] Section 48-1229(4) does not define the term "vacation leave" as distinguished from other types of "paid leave." But a "vacation" from work is ordinarily understood to mean a paid leave of absence granted to an employee for rest and relaxation.[10] In distinguishing "vacation pay" from "compensatory time," we have said that vacation pay is generally regarded as "additional wages for services performed. It is not in the nature of compensation for the calendar days it covers—it is more like a contracted-for bonus for a whole year's work."[11] Paid vacation leave is not conditioned upon an event, such as a holiday, an illness, or a funeral: "[I]t is not conditioned upon anything other than the employee's rendering services for the employer."[12] Instead, an employee may use his or her earned vacation leave for any personal reason without conditions, including for an illness or disability.[13]

[10,11] In contrast to vacation leave, paid sick leave is ordinarily understood to mean an employee's paid absence

[8] *Brook Valley Ltd. Part. v. Mutual of Omaha Bank, ante* p. 157, 825 N.W.2d 779 (2013).

[9] *Moyera v. Quality Pork Internat.*, 284 Neb. 963, 825 N.W.2d 409 (2013).

[10] See Webster's Third New International Dictionary of the English Language, Unabridged 2527 (1981).

[11] *Wadkins v. Lecuona*, 274 Neb. 352, 359, 740 N.W.2d 34, 41 (2007) (emphasis omitted).

[12] *Paton v. Advanced Micro Devices, Inc.*, 197 Cal. App. 4th 1505, 1519, 129 Cal. Rptr. 3d 784, 791 (2011).

[13] See *id.* See, also, *Sloan v. Jasper County Com. Unit School*, 167 Ill. App. 3d 867, 522 N.E.2d 334, 118 Ill. Dec. 879 (1988).

from work for illness or disability.[14] We have held that under both the pre-2007 version of § 48-1229(4) and the amended version, upon an employee's separation of employment, an employer may withhold payment for unused sick leave, but not unused vacation leave. We explained that these leaves are treated differently because an employer has the right to provide sick leave that an employee can use only for illness or injury while employed.[15]

In short, the distinction between paid vacation leave and paid sick leave is that sick leave is contingent upon an occurrence and vacation leave is not. With both vacation and PayFlex's PTO hours, an employee earns the leave and has an absolute right to take this time off for any purpose, subject to the employer's approval of the timing. So the definition of vacation leave is indistinguishable from PayFlex's definition of its PTO benefit. For this reason, legal commentators advise employers subject to similar statutes to maintain separate accounts for employees' accrued vacation leave and sick leave, or to pay employees their unused PTO hours upon separation if they combine vacation leave and sick leave into a single PTO policy.[16] Moreover, in determining whether an employer has a duty to pay PTO hours upon separation of employment, courts have used the terms vacation and "paid time off" interchangeably.[17]

---

[14] See Webster's, *supra* note 10 at 2111.

[15] *Loves v. World Ins. Co.*, 277 Neb. 359, 773 N.W.2d 348 (2009) (supplemental opinion).

[16] See, Mark D. Hansen, Labor and Employment Law, in Ill. Constr. Law Manual, ch. 15, § 15.32 (Ill. Prac. Ser. No. 24, 2012-13); Tamsin R. Kaplan, Employment Agreements, in Advising a Massachusetts Business, ch. 4, 4-1 (Mass. Continuing Legal Educ., 2011); Cathleen S. Yonahara, When Is Paid Time Off the Same as Vacation? in Paid Time Off, 21 No. 10 Cal. Emp. L. Letter 4 (M. Lee Smith Publishers, LLC, 2011). See, also, Jerry L. Pigsley, Neb. State Bar Assn., Payment of Vacation and Other Benefits Upon Termination: The State of Affairs After *Roseland* and L.B. 255, (Neb. Continuing Legal Educ., 2007).

[17] See, e.g., *Lee v. Fresenius Medical Care, Inc.*, 741 N.W.2d 117 (Minn. 2007); *Sexton v. Oak Ridge Treatment Ctr.*, 167 Ohio App. 3d 593, 856 N.E.2d 280 (2006). See, also, *Paton, supra* note 12.

[12] Under § 48-1229, we will consider a payment a wage subject to the Wage Payment Act if (1) it is compensation for labor or services, (2) it was previously agreed to, and (3) all the conditions stipulated have been met.[18] It is true that PayFlex required its employees to use PTO hours for absences because of illness. But this requirement is not dispositive. An employee with vacation leave and no sick leave could also use his or her vacation time for an illness. Like vacation, the appellees earned their PTO hours. And like vacation, the only stipulated condition for their accrual of PTO hours was the rendering of their services. This condition was unquestionably satisfied. The appellees had an absolute right to take this time off for any purpose they wished. Thus, under the plain meaning of the statute's terms, the appellees' PTO hours constituted earned vacation leave.

[13,14] PayFlex's argument that it is not required to pay earned but unused PTO hours is also inconsistent with statutory construction principles. In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself.[19] In construing a statute, we look to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served. A court must then reasonably or liberally construe the statute to achieve the statute's purpose, rather than construing it in a manner that defeats the statutory purpose.[20]

[15,16] We do not consider a statute's clauses and phrases "'as detached and isolated expressions.'"[21] Instead, "'the whole and every part of the statute must be considered in fixing the

---

[18] *Loves, supra* note 15.

[19] *Jacob v. Schlichtman*, 261 Neb. 169, 622 N.W.2d 852 (2001).

[20] *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012).

[21] *Sommerville v. Board of County Commissioners*, 116 Neb. 282, 285, 216 N.W. 815, 816 (1927) (quoting Henry Campbell Black, Handbook on the Construction and Interpretation of the Laws § 99 (2d ed. 1911)).

meaning of any of its parts.'"[22] We attempt to give effect to all parts of a statute and to avoid rejecting a word, clause, or sentence as superfluous or meaningless.[23]

[17,18] The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[24] And we will reject a statutory interpretation that is contrary to a clear legislative intent.[25]

Applying these principles, the Legislature's clear intent in the 2007 amendment was to clarify that employers were not required to pay separating employees any unused paid leave *except* vacation leave. PayFlex does not dispute that even after the 2007 amendment, it was required to pay unused vacation. Yet, accepting its "hybrid benefit" argument would allow any employer to circumvent this requirement by claiming that its combined leave policy was not vacation leave.

We reject this interpretation. If the Legislature had intended to permit employers to avoid the payment of earned vacation leave, it would have done this directly instead of requiring them to do an end run around the statute by combining earned vacation leave with another type of paid leave. That is, it would have simply stated that employers were not required to pay any earned but unused leave upon separation of employment unless the parties have agreed otherwise. Instead, it mandated that employers must pay vacation leave. So interpreting "[p]aid leave, other than earned but unused vacation leave" to include vacation leave if the employer has combined vacation with another type of paid leave would obviously defeat a clear legislative intent. Because PayFlex's interpretation requires us to ignore a statutory mandate, it is not a reasonable

---

[22] *Id*. Accord *Anthony, Inc. v. City of Omaha*, 283 Neb. 868, 813 N.W.2d 467 (2012).

[23] See *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173 (2012).

[24] See *Blakely, supra* note 20.

[25] See, e.g., *Project Extra Mile v. Nebraska Liquor Control Comm.*, 283 Neb. 379, 810 N.W.2d 149 (2012); *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012).

interpretation. The application of § 48-1229(4) cannot depend upon the employer's semantic choices.[26]

[19,20] Finally, we reject PayFlex's argument that the legislative history shows the Legislature considered PTO hours to be a paid leave other than vacation leave. We can examine an act's legislative history if a statute is ambiguous or requires interpretation.[27] But a statute is ambiguous *if* it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way.[28] Here, however, we need no extrinsic aid to determine the Legislature's clear intent that employers pay earned but unused vacation leave. And we have rejected PayFlex's statutory interpretation argument as unreasonable.

[21] To sum up, PayFlex had agreed to provide PTO hours as compensation for labor or services, and the appellees had met the conditions for receiving this compensation. Because the appellees had an absolute right to take this time off for any purpose they wished, under § 48-1229, their earned but unused PTO hours must be treated the same as earned but unused vacation hours. The district court did not err in affirming the county court's summary judgments for the appellees.

PayFlex next contends that the district court erred in affirming the county court's awards of attorney fees and in awarding additional attorney fees. It acknowledges that § 48-1231 authorizes a court to award attorney fees, but it contends that there were no factors present that warranted an award in excess of the statutory minimum. The appellees contend that § 48-1231 does not set a limit on attorney fees and that the evidence supported the county court's awards.

Under § 48-1231, "[a]n employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court." If the employee has an attorney and secures a judgment, the employee "shall be entitled to recover

---

[26] See *Paton, supra* note 12.

[27] *In re Interest of Erick M.*, 284 Neb. 340, 820 N.W.2d 639 (2012).

[28] See, *id.*; *State v. Halverstadt*, 282 Neb. 736, 809 N.W.2d 480 (2011).

. . . all costs of such suit and . . . an amount for attorney's fees assessed by the court, which fees *shall not be less than twenty-five percent of the unpaid wages*."[29] If an appeal is taken and the employee recovers a judgment, the appellate court shall tax as costs an additional award of attorney fees not less than 25 percent of the unpaid wages.[30]

The county court awarded Fisher $6,408.45 in unpaid wages and awarded Norton $3,864.64 in unpaid wages. Twenty-five percent of the combined judgments equaled $2,568.27. At the hearing on the appellees' motions for attorney fees, the court received their attorney's affidavits in support of the motions. The attorney stated that he had spent a total of 54 hours to research and prosecute both cases. He asked the court to apportion his time as 27 hours in each case. He stated that his normal hourly rate was $150 per hour. The court received no other evidence. The county court awarded each appellee $4,050 for attorney fees. On appeal, the district court awarded each appellee additional fees of $2,100.

[22-24] We review a court's award of attorney fees under § 48-1231 for abuse of discretion.[31] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[32] To determine proper and reasonable fees, a court must consider several factors: the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services.[33]

---

[29] § 48-1231 (emphasis supplied).

[30] See *id.*

[31] See, *Schinnerer, supra* note 2; *Roseland v. Strategic Staff Mgmt.*, 272 Neb. 434, 722 N.W.2d 499 (2006).

[32] *Prime Home Care v. Pathways to Compassion*, 283 Neb. 77, 809 N.W.2d 751 (2012).

[33] *Id.*

PayFlex did not contest any of the above factors. On appeal, it does not argue that the awards are unsupported by these factors. Instead, its argument rests on two decisions that it interprets to show that an employer's unreasonable conduct or willful violations must be present to support a court's award of attorney fees in an amount greater than the statutory minimum. We disagree.

PayFlex first relies on *Roseland v. Strategic Staff Mgmt*.[34] There, the district court awarded the plaintiff attorney fees equal to 25 percent of the unpaid wages. On appeal, the employees argued that the court's award of the statutory minimum was erroneous. They argued only that the employer's policy of not paying unused vacation was a clear violation of the Wage Payment Act. We concluded that the court did not abuse its discretion. But we did not conclude that the award was correct because the employer's position was reasonable.

In *Moore v. Eggers Consulting Co*.,[35] the employer appealed from the district court's judgment. The court awarded the employee attorney fees equal to the statutory minimum, and the employee did not cross-appeal. We affirmed the award, but we assessed a higher percentage of the unpaid wages ($33\frac{1}{3}$ percent) for attorney fees on appeal. We concluded that the higher assessment was warranted because of the employer's near-meritless employment practices and its multiple counterclaims which the employee was required to defend.

*Roseland* and *Moore* show that a court has discretion to award attorney fees higher than the statutory minimum because the employer raised unreasonable defenses or vexatious counterclaims. They do not show that these factors must be present before a court can award more than the statutory minimum.

Our more recent decision in *Schinnerer v. Nebraska Diamond Sales Co*.[36] refutes PayFlex's argument. There, the county court's award of attorney fees well exceeded the

---

[34] See *Roseland, supra* note 31.

[35] *Moore v. Eggers Consulting Co*., 252 Neb. 396, 562 N.W.2d 534 (1997).

[36] *Schinnerer, supra* note 2.

statutory minimum, and the district court's award of fees on appeal also exceeded the statutory minimum. We rejected the employer's claim that the fees were excessive without considering whether the employer's position was reasonable or whether it had raised multiple counterclaims unrelated to the Wage Payment Act. Instead, we focused on the abuse of discretion factors for attorney fees and found no evidence of abuse in the record:

> While [the employer] points us to other cases under the Wage Payment Act where the plaintiffs were awarded a lower percentage of fees than were awarded in this case, it does not otherwise indicate how the attorney fees awarded in this case were in error. There is nothing in the record to indicate that the county court or the district court abused its discretion in awarding a fee greater than the minimum 25 percent of the judgment, and we therefore affirm the awards of attorney fees in the county and district courts.[37]

*Schinnerer* controls here. PayFlex conceded in district court that the case raised a novel issue, and it presented no evidence that the fees were unreasonable. Its sole argument was that a departure from the statutory minimum was unwarranted because its position was reasonable and it had not raised multiple defenses apart from its interpretation of the Wage Payment Act. We reject that argument. Because nothing in the record shows that the lower courts abused their discretion, we affirm their awards of attorney fees.

## CONCLUSION

We conclude that the appellees' earned but unused PTO hours were for vacation leave. Accordingly, the lower courts did not err in determining that PayFlex was required to pay the unused PTO hours to the appellees. Nor did the lower courts err in their awards of attorney fees to the appellees.

AFFIRMED.

MILLER-LERMAN, J., participating on briefs.

---

[37] *Id*. at 203, 769 N.W.2d at 357.

Stephan, J., dissenting.

On the surface, these seem to be relatively simple cases. The facts are largely undisputed. PayFlex offers its employees a paid time off (PTO) benefit. They may use all or any part of this paid leave for vacation, but they are not required to do so and may use it for other purposes.

Likewise, the applicable law seems straightforward enough. In *Roseland v. Strategic Staff Mgmt.*,[1] we held that under the language of the Wage Payment and Collection Act,[2] and in particular § 48-1229(4), vacation leave provided by an employer was a fringe benefit and a wage payable to an employee upon separation. In apparent response to *Roseland*, the Legislature amended § 48-1229(4).[3] The amendment added a new sentence which states, "Paid leave, other than earned but unused vacation leave, provided as a fringe benefit by the employer shall not be included in the wages due and payable at the time of separation, unless the employer and the employee . . . have specifically agreed otherwise."[4] We must presume that the Legislature, in adopting the amendment, intended to make some change in the existing law and that we must endeavor to give some effect thereto.[5] When *Roseland* was decided, the Wage Payment and Collection Act treated all fringe benefits as wages which must be paid to an employee upon separation. The 2007 amendment changed the law by establishing a general rule that an employer is not required to pay an employee for accrued paid leave upon separation in the absence of an agreement to do so, with a single exception for "earned but unused vacation leave."[6]

The illusion of simplicity disappears when one attempts to apply the current law to the facts of these cases. The

---

[1] *Roseland v. Strategic Staff Mgmt.*, 272 Neb. 434, 722 N.W.2d 499 (2006).

[2] Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 1998).

[3] See 2007 Neb. Laws, L.B. 255 (now codified at Neb. Rev. Stat. § 48-1229(4) (Reissue 2010)).

[4] *Id*.

[5] See *No Frills Supermarket v. Nebraska Liq. Control Comm.*, 246 Neb. 822, 523 N.W.2d 528 (1994).

[6] § 48-1229(4) (Reissue 2010).

difficulty stems from two factors. First, the Legislature did not define the term "vacation leave" as used in the amended version of § 48-1229(4). Second, PayFlex's PTO policy allows employees to use PTO for both vacation and other purposes, and the reason for the use is at the sole discretion of the employee. The question is whether this type of accrued PTO falls within the general rule established by § 48-1229(4) or the exception in that statute. The problem is that it falls neatly within neither.

The majority attempts to resolve this jurisprudential dilemma by applying the following syllogism: Vacation leave is not contingent upon an event, and this employer's paid time off is not contingent upon an event; thus, this employer's paid time off is vacation leave. But the majority's major premise is flawed. While vacation leave may not be contingent upon an event, it does not logically follow that there cannot be some other type of leave that also is not contingent upon an event. And clearly, the language of § 48-1229(4) permits employers and employees to agree upon paid leave that is both not contingent upon some event and not vacation leave.

The majority reasons that its approach carries out the intent of the Legislature because unless all accrued PTO is treated as "unused vacation leave," the employer would be permitted to circumvent the requirement of § 48-1229(4) that it pay a separated employee for vacation leave. But the other side of the coin is that by treating *all* accrued PTO as vacation leave simply because vacation is one of the multiple purposes for which the leave may be used, the majority broadens the category of paid leave payable upon separation, which is directly contrary to the Legislature's intent when it amended § 48-1229(4).

In the absence of clarification by further amendment of the statute, which I would welcome and invite, there is no perfect solution to this dilemma. Nevertheless, I would resolve this case in favor of PayFlex because I believe doing so most closely carries out the Legislature's intent when it amended the Wage Payment and Collection Act in response to *Roseland*.

My analysis starts with the recognition that there is no law that requires an employer to grant its employees either vacation time or vacation leave. Instead, because the relationship between employer and employee is contractual,[7] the granting of vacation time is purely a matter of contract between the employer and the employee. The fact that PayFlex had no legal obligation to provide vacation leave, or any form of paid leave, guides my interpretation of § 48-1229(4). I agree with the majority that in amending § 48-1229(4), "the Legislature's clear intent . . . was to clarify that employers were not required to pay separating employees any unused paid leave *except* vacation leave." (Emphasis in original.) But the amended statute is ambiguous because it does not define "vacation leave." Because the Legislature clearly meant "vacation leave" to be an exception to the general rule, and because an employer has no legal obligation to provide vacation leave at all, I would define "vacation leave" in § 48-1229(4) very narrowly to mean leave that may only be used for vacation. I accept the majority's statement that "vacation" from work is generally understood to mean a paid leave of absence granted to an employee for rest and relaxation.

Utilizing this definitional framework, the PayFlex PTO is not "vacation leave" within the meaning of § 48-1229(4). Instead, it is a much broader form of paid leave which provides an employee with flexibility to use PTO for any purpose he or she chooses, including, but not limited to, taking a vacation, recovering from surgery, painting a house, repairing a vehicle, nursing a cold, caring for a parent, taking an adult education class, or looking for another job. The PayFlex policy expressly states that earned PTO will not be paid upon separation of employment. No law prevents PayFlex from structuring its PTO policy in this way. By doing so, it is not circumventing any legal obligation to pay "unused vacation leave" because it has no legal obligation to provide "vacation leave," and in my view, it has not done so. It has provided a different type of paid leave which falls within the general rule of § 48-1229(4),

---

[7] See *Meyer v. State Farm Mut. Auto. Ins. Co.*, 192 Neb. 831, 224 N.W.2d 770 (1975).

not within the exception. A herd of elephants cannot be fairly characterized as a herd of zebras simply because one zebra is traveling with the elephants. By treating multi-purpose PTO as defined in the PayFlex policy as the equivalent of vacation leave simply because vacation is one of the purposes for which it can be used, the majority's reasoning permits the exception to swallow the rule.

Because I would hold that PayFlex's PTO is not vacation leave within the meaning of § 48-1229(4), I would find that the employees were not entitled to recover attorney fees under § 48-1231. For these reasons, I would reverse the judgment of the district court in each of these consolidated cases and remand the causes with directions to reverse the judgments of the county court and remand with directions to dismiss.

HEAVICAN, C.J., and CASSEL, J., join in this dissent.

———————————

WILLIAM JERRY SMITH, APPELLANT, V. MARK
CHRISMAN TRUCKING, INC., APPELLEE.
___ N.W.2d ___

Filed May 3, 2013.    No. S-12-754.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.
2. ____: ____. With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination.
3. **Statutes: Legislature: Intent.** A legislative act operates only prospectively and not retrospectively unless the legislative intent and purpose that it should operate retrospectively is clearly disclosed.
4. **Statutes: Time.** Statutes covering substantive matters in effect at the time of the transaction or event govern, not later enacted statutes.
5. ____: ____. Procedural amendments to statutes are ordinarily applicable to pending cases, while substantive amendments are not.