Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/10/2020 08:07 AM CDT

Kevin Drought and Kyle Fessler, appellants, v.
Eric Marsh and The Bar at the Yard, LLC,
doing business as Longwells
Restaurant, appellees.

___ N.W.2d ___

Filed January 17, 2020.    No. S-19-018.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a
   lower court's grant of summary judgment if the pleadings and admitted
   evidence show that there is no genuine issue as to any material facts or
   as to the ultimate inferences that may be drawn from the facts and that
   the moving party is entitled to judgment as a matter of law.
2. **Statutes: Judgments: Appeal and Error.** The meaning and interpreta-
   tion of a statute are questions of law. An appellate court independently
   reviews questions of law decided by a lower court.
3. **Statutes: Judicial Construction: Legislature: Intent: Presumptions.**
   Where a statute has been judicially construed and that construction has
   not evoked an amendment, it will be presumed that the Legislature has
   acquiesced in the court's determination of the Legislature's intent.
4. **Employer and Employee: Employment Contracts: Wages: Appeal
   and Error.** Under Neb. Rev. Stat. § 48-1229 (Cum. Supp. 2018), an
   appellate court will consider a payment a wage subject to the Nebraska
   Wage Payment and Collection Act if (1) it is compensation for labor
   or services, (2) it was previously agreed to, and (3) all the conditions
   stipulated have been met.

Appeal from the District Court for Lancaster County:
Andrew R. Jacobsen, Judge. Affirmed.

Jennifer M. Tomka, of Amen Law, for appellants.

Brian S. Koerwitz, of Endacott, Peetz & Timmer, P.C.,
L.L.O., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

After two employees separated from their employment with a restaurant, they sued for "paid time off" (PTO) compensation under the Nebraska Wage Payment and Collection Act (Wage Act).[1] Upon cross-motions for summary judgment, the district court sustained the employer's motion. Because the employees did not meet the written employment agreement's stated conditions to earn PTO, we affirm the summary judgment.

## BACKGROUND

### Parties

The Bar at the Yard, LLC, doing business as Longwells Restaurant, is a restaurant and bar in Lincoln, Nebraska. Eric Marsh is the owner of Longwells Restaurant. We will refer to The Bar at the Yard, LLC; Longwells Restaurant; and Marsh collectively as "Longwells."

Kevin Drought worked as the general manager of Longwells from October 2013 to October 22, 2015. He was paid a yearly salary of $80,000. Kyle Fessler worked as Longwells' head chef from October 2013 to December 8, 2015. His annual salary was $49,999.99.

### Employment Agreement

Drought and Fessler were required to sign a "Longwells Employee Agreement" in order to obtain employment. Under "Work Hours," the agreement stated in part that "you will be expected to work a minimum of 40 hours per week other than paid time off which is addressed below." The "Termination" provision of the agreement stated that "if, at any point, 60 days

---

[1] See Neb. Rev. Stat. § 48-1228 et seq. (Reissue 2010, Cum. Supp. 2018 & Supp. 2019).

pass with you billing no hours to a client, this agreement will be considered terminated."

The "Compensation" section of the agreement included the following provisions:

1. You will be paid weekly

2. Your earnings will be based on your billable hours

3. You will be paid <<**employee's hourly wage rate**>> . . . for every hour billed to and approved by the client

4. Billable hours are determined based on the Company's understanding with its clients

5. You will be required to provide the Engagement Manager with a timesheet signed off by the client designee in order to be paid

6. The Company will provide the timesheet template to you separately

7. If you do not produce an approved time sheet then you will not be considered to have earned billable hours

8. Approved timesheets are to be submitted per the "Time and Expense Reimbursement Policy and Procedure" which will be provided to you separately

The PTO section specified that PTO included vacation, sick days, and holidays. A table showed that when the "Employment Anniversary" is "[l]ess than 2 years," an employee would earn 4 hours of PTO "per 40 hour + week billed." Once the employment anniversary reached 2 years, the amount of PTO earned increased to 5 hours.

## Lawsuit

After separating from employment, Drought and Fessler requested compensation for PTO that they claimed had been earned but not paid. Longwells refused the requests. Drought and Fessler then sued Longwells, alleging a violation of the Wage Act. They asserted that the employment agreement governed PTO to be paid. The complaint alleged that Longwells owed PTO of $16,430.86 to Drought and $10,027.61 to Fessler.

As an affirmative defense, Longwells asserted mutual mistake. But Longwells also asserted that if the court found that the employment agreement should not be rescinded or reformed based upon mutual mistake, Drought and Fessler's claims were barred by the terms of the agreement. Specifically, Longwells contended that no PTO accrued under the agreement, because Drought and Fessler did not have billable hours and did not bill hours to a client.

## Summary Judgment

The parties filed cross-motions for summary judgment. The evidence was undisputed that as salaried employees, Drought and Fessler were not required to keep track of their hours worked. It was also undisputed that Drought and Fessler did not have clients or billable hours.

Drought and Fessler claimed to have "easily worked at least 40 hours per week," but Marsh stated that Drought worked less than 30 hours in a week on multiple occasions. Drought testified in a deposition that he was paid a salary every week regardless of the number of hours he worked. Drought took 1 week of vacation in 2014, and Longwells paid him for that vacation time. Fessler took 1 week of vacation in 2014 and in 2015, and he similarly stated that Longwells paid him for that vacation time. Marsh testified that Drought and Fessler took time off, but that there was never a PTO offer or policy. Marsh testified that he "never docked anyone's salary when they were off for sick time or vacation time." According to Marsh, PTO was not discussed at the time of hiring, was not a term of employment, and neither he nor Drought or Fessler knew the PTO clause was in the agreement when it was signed.

Marsh stated that he asked Drought and Fessler to sign the employment agreement for the sole purpose of the noncompete provision. The employment agreement was based off a document used by an information technology company that employed independent contractors who serviced clients of the

information technology company. According to Marsh, the agreement contained a number of provisions that were never intended to apply to employees of Longwells.

The court found that there was no dispute payment for accrued PTO is compensation for labor or services and that Drought and Fessler each signed the employment agreement containing a provision for PTO. The court framed the dispute as whether Drought and Fessler satisfied the terms of the employment agreement in order to be entitled to PTO. The court found that Drought and Fessler could not have earned any PTO because they did not have timesheets signed by clients nor did they have billable hours. The court determined that hours worked did not equate to hours billed and that there was no agreement to provide PTO based on hours "worked." The court reasoned that because Drought and Fessler did not bill any hours to clients, they could not have earned any PTO under the plain language of the employment agreement. Thus, the court sustained Longwells' motion for summary judgment, overruled Drought and Fessler's motion, and dismissed the complaint.

Drought and Fessler filed a timely appeal.

## ASSIGNMENTS OF ERROR

Drought and Fessler assign that the court erred in (1) failing to find that they were entitled to their earned but unused PTO; (2) failing to find that there were terms in the employment agreement that were inapplicable to their employment situation, in finding that they did not earn PTO because they could not prove billable hours, and in failing to address that there could be no mutual mistake in a unilateral employment agreement; (3) failing to find that the parties' understanding and agreement of how PTO was earned was demonstrated by the fact that both Drought and Fessler had been paid for PTO before their terminations; and (4) sustaining Longwells' motion for summary judgment and overruling Drought and Fessler's motion for summary judgment.

## STANDARD OF REVIEW

[1] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[2]

[2] The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.[3]

## ANALYSIS

### Wage Act

The Wage Act requires an employer to pay "unpaid wages" to an employee who separates from the payroll.[4] It defines "[w]ages" to include "fringe benefits, when previously agreed to and conditions stipulated have been met by the employee."[5] The Wage Act further provides that "[p]aid leave, other than earned but unused vacation leave, provided as a fringe benefit by the employer shall not be included in the wages due and payable at the time of separation, unless the employer and the employee or the employer and the collective-bargaining representative have specifically agreed otherwise."[6]

[3] In *Fisher v. PayFlex Systems USA*,[7] a majority of this court determined that because the employees in that case could use PTO hours for any purpose, the unused PTO hours must be treated the same as earned but unused vacation hours, i.e., a wage that must be paid upon separation of employment.

---

[2] *Williamson v. Bellevue Med. Ctr., ante* p. 312, 934 N.W.2d 186 (2019).

[3] *Professional Firefighters Assn. v. City of Omaha*, 290 Neb. 300, 860 N.W.2d 137 (2015).

[4] § 48-1230(4)(a).

[5] § 48-1229(6).

[6] *Id.*

[7] *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013).

The dissent identified two difficulties in applying the law to the facts of the case: (1) The Legislature did not define the term "'vacation leave'" and (2) the employer's PTO policy allowed employees to use PTO for both vacation and other purposes in the employee's discretion.[8] Although the dissent invited clarification by further amendment of the statute and the Legislature indeed amended § 48-1229 the following year,[9] it did not provide any clarification regarding vacation leave or fringe benefits payable upon separation. Where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent.[10] Thus, PTO which can be used as vacation leave should be treated the same as earned but unused vacation leave under the Wage Act.

### Entitlement to PTO
### Under Agreement

The crux of Drought and Fessler's argument is that Longwells owed them PTO because the employment agreement—which they were required to sign—contained a section concerning PTO. We disagree.

[4] The statute imposes three requirements. Under § 48-1229, an appellate court will consider a payment a wage subject to the Wage Act if (1) it is compensation for labor or services, (2) it was previously agreed to, and (3) all the conditions stipulated have been met.[11] Here, the decision turns upon the third requirement.

Drought and Fessler's claim fails the third requirement, because they did not satisfy the conditions set forth in the

---

8 *Id.* at 824, 829 N.W.2d at 716 (Stephan, J., dissenting; Heavican, C.J., and Cassel, J., join).

9 2014 Neb. Laws, L.B. 765, § 1.

10 *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017).

11 *Fisher v. PayFlex Systems USA, supra* note 7.

agreement. Under the agreement, an employee earned PTO "per 40 hour + week billed." The agreement specified that earnings were based on billable hours and that an employee will not be considered to have earned billable hours if the employee did not produce an approved timesheet "signed off" by a client designee. But Drought and Fessler were paid a set salary—they did not have clients, did not have billable hours, and did not submit timesheets.

Drought and Fessler attribute significance to the past payment of vacation time. They argue that if billing clients and proving a 40-hour workweek had been required to earn PTO, Longwells would not have paid them for their PTO during their employment. But it appears from the evidence that as salaried employees, Drought and Fessler were paid the same amount each week no matter how many, if any, hours they worked.

Drought and Fessler assign that the district court erred in failing to address Longwells' assertion of a mutual mistake, which they argue does not apply to a unilateral employment agreement. However, the court had no need to do so. Drought and Fessler claimed they were entitled to PTO due to the inclusion of a PTO section in the employment agreement. But because they did not meet the conditions required under the written employment agreement to earn PTO, it is not a wage subject to the Wage Act.[12]

## CONCLUSION

There is no dispute that Drought and Fessler did not bill to clients more than 40 hours of work per week. Accordingly, they did not earn PTO under the terms of the employment agreement. We affirm the order of the district court which granted summary judgment in favor of Longwells.

AFFIRMED.

---

[12] See *id.*