WELDON E. LOEWENSTEIN, APPELLEE, v. MIDWESTERN INVESTMENT COMPANY, A CORPORATION, ET AL., APPELLANTS, IMPLEADED WITH ERMA L. BUTLER ET AL., APPELLEES.

149 N. W. 2d 512

Filed March 31, 1967. No. 36313.

Wagener, Marx & Youngs, Mattson, Ricketts & Gourlay, and Donald L. Biehn, for appellants.

Joseph Ginsburg and Edwin F. Dosek, for appellee Loewenstein.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is an action by the purchaser of securities against the seller to recover the purchase price under statutory provisions authorizing civil recovery for violation of the Blue-Sky Law.

The action was brought against the defendant Midwestern Investment Company and the individual defendants who were officers and directors of the company. On May 15, 1961, the plaintiff, who was a farmer, was solicited by the individual defendants, Lester E. Jones and M. L. Simmons, for the purchase of shares of the capital stock of Midwestern Investment Company. He paid $5,250 to the company for 1,500 shares of its stock at

$3.50 per share. The plaintiff testified that it was represented to him that the stock had been approved by the state; and that the sale price was $3.50 per share. Concealed from the plaintiff was the fact that the book value of the stock at the time of the sale was approximately 50 cents per share; that the majority of stock had been sold for $1 per share; and that the company had accumulated substantial losses and deficits since the date of its organization in June 1960. The plaintiff testified that he would not have purchased the stock had he known the truth concerning the facts misrepresented or concealed.

The stock of Midwestern Investment Company was not exempt under any provisions of the Blue-Sky Law, nor did the company or any salesman have a permit as broker or salesman at the time of the sale. Prior to the sale of stock to the plaintiff, the defendant had issued written offers to repurchase a substantial number of shares of its original stock issue because it had not been authorized or registered as required by the Blue-Sky Law. The stock of several stockholders had been repurchased and was held as treasury stock by the corporation. It was some of this stock that was sold to the plaintiff. It is clear that the officers and directors knew these facts. Counsel for the company specifically advised the directors on April 21, 1961, that the sale of this treasury stock was, in his opinion, a violation of the Blue-Sky Law. On that date, the board of directors adopted a resolution to make available 22,500 shares of treasury stock, in blocks of not more than 1,500 shares per person at $3.50 per share, with the sale to be limited to members of the advisory board of the United Reserve Life Insurance Company or the substantial stockholders of that company who had asked for the opportunity to make such purchase. United Reserve Life Insurance Company was an insurance company which had been organized and its stock sold by the defendant company under authorization by the state Department of Insur

ance. The plaintiff had previously purchased some of the United Reserve Insurance Company stock from one of the same persons who sold the stock involved here. The only directors voting against the April 21 resolution were the company's counsel and the individual defendant B. B. Wright. Mr. Wright testified that he voted against the resolution not only because of counsel's opinion that it was in violation of the Blue-Sky Law, but also because he did not think $3.50 was a large enough price.

The district court found that fraud had been perpetrated upon the plaintiff and entered judgment against the defendants and each of them, and this appeal followed.

The Blue-Sky Law which was effective at the time of the sale here, but has been since replaced, was originally adopted in 1937, although the particular portions of the statute dealing with civil liability to a purchaser were not incorporated until 1955. A portion of the original act of 1937 which was still in effect provided that in any civil action, the sale of securities in violation of the act should be deemed prima facie evidence of fraud upon the part of the seller. § 81-335, R. R. S. 1943.

In 1955, the Legislature adopted civil liability sections. Section 81-347, R. R. S. 1943, provides: "Any person, except a person who shall have obtained from the Department of Banking a permit to do business as a broker or salesman, who shall within the State of Nebraska sell, issue, exchange, or transfer any security or interest therein in violation of sections 81-302 to 81-346, shall be liable to the purchaser of the security for the value of the consideration paid by the purchaser less the amount of any income or recovery received thereon."

Section 81-348, R. S. Supp., 1963, adopted at the same time and amended in 1959, provides in part: "An action to enforce liability as provided in section 81-347 must be commenced within five years after the date of the

sale * * *. Such an action shall be heard and determined by the court as an action in equity."

We are here dealing with an illegal contract or what is referred to as an illegal bargain in the Restatement of Contracts. The Legislature has clearly made such a bargain illegal and criminal insofar as the seller is concerned. However, the statute was intended for the protection of the public from fraud and imposition and for the benefit of purchasers as opposed to sellers. Under such circumstances, we believe the rule stated in Restatement, Contracts, section 601, page 1116, applies: "If refusal to enforce or to rescind an illegal bargain would produce a harmful effect on parties for whose protection the law making the bargain illegal exists, enforcement or rescission, whichever is appropriate, is allowed." The reasons for such a rule being applied in favor of a party for whose benefit the law was intended and against a party toward whom the prohibition or penalty is directed are well stated in 6A Corbin on Contracts, section 1540, page 833.

We hold that a contract for sale or a sale of securities in violation of the provisions of the Blue-Sky Law is not void, but voidable by the purchaser, and the purchaser's remedies embrace enforcement or rescission, whichever is appropriate.

Here the plaintiff has elected to avoid the bargain and seek rescission and restitution under the civil liability section of the statute. The defense rests on equitable estoppel, incorporating laches, waiver, and ratification, or on the doctrine of pari delicto. The plaintiff attended a stockholders meeting of the defendant company on October 15, 1962, and at that meeting was elected a director of the defendant company, and, on the same day, at the directors meeting following the stockholders meeting, was elected secretary-treasurer and also attended a directors meeting on November 12, 1962, and then resigned prior to the board of directors meeting for December. At the stockholders meeting in October at

which the plaintiff was elected director, the minutes reflect that the individual defendant Brown, who had dominated management of the defendant company from the time of its organization, had resigned the preceding year. There was extensive discussion of matters of disagreement with former management and a discussion about stock sales during the early part of 1960 and 1961. The defendant Wright, who had succeeded Brown as president, pointed out that operations had not been profitable and explained how management was doing its best to overcome the situation it inherited from Mr. Brown. Stockholders were given a copy of an accountant's report which was reviewed. One stockholder finally stated that it seemed to him that management was really headed in the right direction now and that the big money drain had been stopped. He then moved that the activities of the officers and board of directors since its organization in the sale of the stock of the company and particularly all actions since the last meeting of stockholders be approved, authorized, and ratified as and for the acts of the company. This motion was seconded by the plaintiff and unanimously adopted.

The plaintiff never signed any checks, nor did he participate in management in any way except for his attendance at the two board meetings in October and November 1962. His testimony that he had never had occasion to examine and read and analyze a financial report was uncontradicted and he also testified that he did not realize at the time of the annual stockholders meeting in 1962 that his stock had been issued illegally, nor that other stockholders had acquired their stock for $1 a share, nor that some had been issued for services, nor that the company had lost money since its very beginning. He had no association with the company at all for over a year after he became stockholder and specifically testified that during the brief period he was an officer and director, he did not get the full story of the activities of the company.

It is on this record that the defendants ground their contention that the plaintiff's conduct constituted an equitable estoppel or placed him in pari delicto with the defendants, as to the illegal sale of the stock to him.

Ordinarily, in the absence of intervening rights of third persons or the purchaser's duty to insist on compliance with the securities regulations, the doctrine of equitable estoppel cannot be invoked by the seller of stock or other securities to defeat the purchaser's claim that the contract is invalid because it violates the state's securities regulations.

Conduct which constitutes participation sufficient to estop a purchaser or place him in pari delicto is difficult to generalize or define. Generally speaking, cases holding that the purchaser's conduct placed him in pari delicto are those in which the purchaser's participation was in the original organization and management, or was prior to or in connection with the sale of the securities to him, or where his participation involved illegal securities transactions. See Annotation, 84 A. L. R. 2d 479. We find no support for the position that participation in the affairs of the company under circumstances such as are involved here is sufficient to estop the purchaser or place him in the position of being in pari delicto. If it were, about all that would be necessary to wipe out the statutory liability or permit the wrongdoer to enforce an illegal bargain after its completion would be to elect an unsuspecting purchaser to the board of directors and have him attend a meeting or two.

"A plaintiff is not regarded as in pari delicto with the defendant, if, even though he knew or had reason to know that the bargaining was illegal or immoral, he was induced to participate in it by fraud or duress or by the use of influence derived from superior knowledge, mental power, or economic position." 6A Corbin on Contracts, § 1537, p. 826.

The facts here are insufficient to place the plaintiff in pari delicto, nor do they serve to forfeit the plaintiff's

right of avoidance under the statutory provisions with respect to civil recovery under the Blue-Sky Law.

The defendants also argue that the statute providing civil liability for a violation of the Blue-Sky Law refers only to any person and does not specifically extend to officers or directors or persons participating in the sale, and that, therefore, the individual defendants who did not directly participate in the sale to the plaintiff cannot be held liable. This question with respect to sections 81-347, R. R. S. 1943, and 81-348, R. S. Supp., 1963, was specifically answered adversely to the defendants' contention in the case of Davis v. Walker, 170 Neb. 891, 104 N. W. 2d 479. Here there is no question that the individual defendants knew, or in the exercise of reasonable care could have known, the existence of the facts by reason of which the liability here existed. The evidence was sufficient to support the trial court's finding that the individual defendants engaged, participated, permitted, or ratified the sale to the plaintiff and that fraud was perpetrated upon the plaintiff in the sale of the stock to him.

For the reasons stated, the judgment of the trial court was correct and is affirmed.

AFFIRMED.