the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[12]

For the order to be issued, Torres would have needed to provide at least some evidence of abuse as defined under § 42-903(1). Based on her own testimony, the only bodily harm inflicted on Torres was what appears to have been an accidental elbowing—this certainly falls short of the "intentionally and knowingly" requirement of subsection (1)(a). Torres did not present any evidence that Morales threatened her as required by subsection (1)(b). And, finally, Torres did not present any evidence of any nonconsensual sexual contact as required by subsection (1)(c).

The district court did not err in failing to issue the protection order.

## CONCLUSION

For the foregoing reasons, the order dismissing the cause is affirmed, but the portion of the order requiring Torres to pay the costs of the action is reversed.

AFFIRMED IN PART, AND IN PART REVERSED.

HEAVICAN, C.J., participating on briefs.

---

[12] *Elstun, supra* note 1.

---

SourceGas Distribution LLC, a Delaware limited liability company, appellant, v. City of Hastings, Nebraska, a municipal corporation, for and on behalf of the board of public works of the City of Hastings, appellee.

___ N.W.2d ___

Filed March 7, 2014.    No. S-13-239.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law that an appellate court independently reviews.

2. ____: ____. Absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning.

3. **Statutes: Legislature: Intent: Appeal and Error.** An appellate court will not look beyond a statute to determine the legislative intent when the words are plain, direct, or unambiguous.

4. **Statutes: Appeal and Error.** In construing statutory language, an appellate court attempts to give effect to all parts of a statute and to avoid rejecting a word, clause, or sentence as superfluous or meaningless.

5. ____: ____. An appellate court will not read into a statute a meaning that is not there.

Appeal from the District Court for Adams County: Stephen R. Illingworth, Judge. Affirmed.

Stephen M. Bruckner and Russell A. Westerhold, of Fraser Stryker, P.C., L.L.O., and Timothy Knapp, of SourceGas Distribution LLC, for appellant.

Michael E. Sullivan, of Sullivan Shoemaker, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.
### NATURE OF CASE
The City of Hastings, Nebraska, on behalf of the board of public works of the City of Hastings, had filed a petition in the county court for Adams County on January 15, 2013, seeking to initiate condemnation proceedings against property owned by SourceGas Distribution LLC that was located in an area that had been annexed by Hastings. Hastings brought its petition under the general condemnation procedures found at Neb. Rev. Stat. §§ 76-701 through 76-726 (Reissue 2009 & Cum. Supp. 2012) (chapter 76). In an effort to enjoin the county court proceedings, on January 22, in a separate matter, SourceGas Distribution filed a complaint for temporary and permanent injunction in the district court for Adams County, primarily alleging that Hastings must utilize Nebraska's Municipal Gas System Condemnation Act, Neb. Rev. Stat. §§ 19-4624 through 19-4645 (Reissue 2012) (Gas System Condemnation Act), rather than the procedures in chapter 76. The district court case gives rise to this appeal.

An evidentiary hearing was conducted on SourceGas Distribution's motion for temporary injunction, and on February 22, 2013, the district court filed an order overruling the motion for temporary injunction and dismissing the complaint. The district court concluded, inter alia, that § 19-4626(2) exempted Hastings from being required to proceed under the Gas System Condemnation Act and that Hastings could utilize the general condemnation procedures set forth in chapter 76. SourceGas Distribution appeals, assigning various errors. The district court stayed the condemnation proceedings pending this appeal. We conclude the district court correctly concluded that pursuant to § 19-4626(2), the Gas System Condemnation Act does not apply to this case, and that instead, chapter 76 applies. Finding no errors, we affirm.

## STATEMENT OF FACTS

Hastings is located in Adams County and is a city of the first class as defined by Neb. Rev. Stat. § 16-101 (Reissue 2012). Hastings, by and through its board of public works, which is often referred to as "Hastings Utilities," owns and operates its own municipal utility system.

SourceGas Distribution is a Delaware limited liability company with its principal place of business located in Golden, Colorado. SourceGas Distribution provides retail natural gas distribution service throughout Adams County, except for certain areas served by Hastings.

On March 14, 2011, Hastings' city council adopted ordinance No. 4279 and thereby annexed an area east of Hastings, which primarily consisted of a community college campus. SourceGas Distribution owns easements, rights-of-way, natural gas pipelines, mains, distribution mains and lines, meters, measuring and regulating stations facilities, and appurtenances (gas facilities) in the area that was annexed. It is this collection of gas facilities which Hastings seeks to acquire through condemnation proceedings commenced in county court and to which SourceGas Distribution objects in its lawsuit filed in district court.

The record shows that on March 22, 2011, Hastings contacted SourceGas Distribution and commenced negotiations to

acquire SourceGas Distribution's gas facilities located in the annexed area; however, the negotiations were not successful and ended in December 2012. After the negotiations failed, on January 15, 2013, Hastings commenced condemnation proceedings by filing a petition styled "Petition for Appointment of Appraisers" in county court. See City of Hastings v. SourceGas Distribution, Adams County Court, case No. CI 13-86. By the petition, Hastings sought to acquire the gas facilities owned by SourceGas Distribution in the annexed area by utilizing the condemnation procedures set forth in chapter 76.

The petition stated that Hastings had determined the necessity of acquiring

> title and ownership to certain pipelines, mains, distribution mains and lines, meters, measuring and regulating stations, and other equipment and appurtenances, as well as any interests in real estate, including but not limited to fee simple title, easements, rights-of-way, licenses, and its customer accounts all owned by SourceGas Distribution, LLC or its affiliates, and all related to the distribution of natural gas . . . which are presently owned by [SourceGas Distribution]. This acquisition is being made in connection with a proposed project for the acquisition and/or installation of those Gas Facilities necessary to enable [Hastings] to furnish and distribute natural gas service to all natural gas customers located within an area recently annexed to the City of Hastings.

The petition further stated that Hastings sought to acquire "all of [SourceGas Distribution's] Gas Facilities located within the boundaries of that certain area which was annexed by the City of Hastings on March 14, 2011," and that the boundaries of the annexed area were described by legal description within the ordinance annexing the area, ordinance No. 4279, and the map attached thereto. A copy of ordinance No. 4279 and the map were attached to Hastings' petition.

On January 22, 2013, in the separate matter before us, SourceGas Distribution filed its "Complaint for Temporary and Permanent Injunction and Other Equitable Relief" in district court, generally alleging that Hastings is unlawfully attempting to condemn the gas facilities by proceeding under

the general condemnation procedures set forth in chapter 76. In the complaint, SourceGas Distribution specifically alleged that it was entitled to an injunction because the proper procedures that Hastings must utilize to condemn SourceGas Distribution's gas facilities are set forth in the Gas System Condemnation Act rather than in chapter 76. SourceGas Distribution also alleged in its complaint that Hastings failed to comply with § 76-704.01 because it failed to precisely describe in its county court petition the property sought to be condemned. SourceGas Distribution further alleged that Hastings failed to negotiate with SourceGas Distribution in good faith prior to commencing condemnation. Attached to SourceGas Distribution's complaint was a copy of a description of real property owned by SourceGas Distribution in the annexed area and a copy of Hastings' condemnation petition and its exhibits.

On the same date that SourceGas Distribution filed its complaint, it also filed a "Motion for Temporary Injunction" seeking to temporarily enjoin Hastings from condemning the gas facilities owned by SourceGas Distribution. A hearing was held on the motion on January 29, 2013. At the hearing, SourceGas Distribution offered and the district court received three affidavits, and Hastings offered and the district court received two affidavits. The district court granted the parties leave to file additional affidavits. Hastings offered three additional affidavits, including that of Lash Chaffin from the League of Nebraska Municipalities, describing, inter alia, his understanding of the relevance of the Gas System Condemnation Act. On February 12, SourceGas Distribution filed written objections to Chaffin's affidavit, based on hearsay, insufficient foundation, and relevance. On February 22, the district court received the three additional exhibits offered by Hastings, including Chaffin's affidavit.

On February 22, 2013, the district court filed its "Journal Entry and Order of Dismissal," in which it overruled SourceGas Distribution's motion for temporary injunction and dismissed SourceGas Distribution's complaint.

With respect to the applicable law, the district court rejected SourceGas Distribution's argument that Hastings must utilize

the procedures set forth in the Gas System Condemnation Act to condemn SourceGas Distribution's property. The centerpiece of the district court's conclusion as to the applicable statute was its determination that § 19-4626(2) exempts Hastings from proceeding under the Gas System Condemnation Act. Section 19-4626(2) provides: "Nothing in the act shall be construed to govern or affect the manner in which a city which owns and operates its own gas system condemns the property of a utility when such property is brought within the corporate boundaries of the city by annexation." The district court noted that Hastings owns its own gas system and had previously annexed the area in question.

With respect to the merits, the district court reasoned that SourceGas Distribution had not suffered and will not suffer irreparable harm due to the condemnation proceedings because the only harm SourceGas Distribution could suffer is financial, and under chapter 76, Hastings is obligated to compensate SourceGas Distribution for its loss. The district court further determined that SourceGas Distribution did not have a clear right to the relief it sought and that it is not against the public interest for Hastings to utilize the condemnation procedures under chapter 76. The district court did not directly address the issue of whether the property was adequately described in the condemnation petition. Based on the above reasoning, the district court overruled SourceGas Distribution's motion for temporary injunction, stated that it is "obvious [SourceGas Distribution] would not succeed on the merits of its complaint," and dismissed its complaint.

SourceGas Distribution appeals. The district court stayed the condemnation proceedings pending this appeal.

## ASSIGNMENTS OF ERROR

SourceGas Distribution assigns on appeal, restated, that the district court generally erred when it denied SourceGas Distribution's motion for temporary injunction and dismissed its complaint. SourceGas Distribution specifically claims that the district court erred when it concluded that chapter 76 and not the Gas System Condemnation Act was applicable to the condemnation of the gas facilities. SourceGas Distribution also

claims the district court erred when it failed to find that the description of the property to be appraised in the county court matter was inadequate and when it received Chaffin's affidavit into evidence.

## STANDARD OF REVIEW

[1] Statutory interpretation presents a question of law that an appellate court independently reviews. *In re Estate of Odenreider*, 286 Neb. 480, 837 N.W.2d 756 (2013).

## ANALYSIS

[2-5] Because its reading of § 19-4626(2) of the Gas System Condemnation Act was fundamental to the district court's resolution of the case, we are asked on appeal to construe § 19-4626(2). We begin by turning to the familiar canons of statutory construction. Absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning. *Strasburg v. Union Pacific RR. Co.*, 286 Neb 743, 839 N.W.2d 273 (2013). We will not look beyond a statute to determine the legislative intent when the words are plain, direct, or unambiguous. *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013). In construing statutory language, we attempt to give effect to all parts of a statute and to avoid rejecting a word, clause, or sentence as superfluous or meaningless. See *id*. Likewise, we will not read into a statute a meaning that is not there. *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012). Based on these principles and given our independent reading of the plain language of § 19-4626(2) discussed below, we need not refer to the substance of Chaffin's affidavit in the resolution of this case. The admission of Chaffin's affidavit, if error, was harmless. See *Simon v. Drake*, 285 Neb. 784, 792, 829 N.W.2d 686, 692 (2013) (stating that "[i]n a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party"). Therefore, we determine that SourceGas Distribution's assignment of error regarding the admission of Chaffin's affidavit is without merit.

Chapter 76 ordinarily applies to condemnation proceedings, and the general condemnation procedures found in chapter 76 apply unless there are more specific statutes that will govern the condemnation proceedings. Section 76-703 provides that if the condemnation proceedings will result in a decrease in the condemnee's territory or volume of service, then the determination of damages shall be determined pursuant to the more specific statutes rather than the damage provisions found in chapter 76, if those other statutes apply to the condemnation at issue. Section 76-703 provides:

> Damages to be paid by the condemner for any property including parts of or easements across rights-of-way of a public utility or a railroad taken through the exercise of the power of eminent domain shall be ascertained and determined as provided in sections 76-704 to 76-724, except that if it is sought to condemn the property, or such part thereof as will result in a decrease in the territory or volume of service, of a public utility engaged in the rendition of existing service, such damages shall be ascertained and determined as provided in sections 19-701 to 19-707 [pertaining to waterworks, electric utilities, and railways] and 70-650 [pertaining to electric distribution systems] or the . . . Gas System Condemnation Act, when applicable.

SourceGas Distribution contends that because the condemnation proceedings by Hastings will result in a decrease of SourceGas Distribution's territory or volume of service, one of the specific statutes listed in § 76-703, rather than chapter 76, shall apply to the determination of damages. We disagree. In this regard, we note that § 76-703 provides that damages shall be ascertained under one of the more specific statutes instead of chapter 76 only "when [those other statutes are] applicable"—a determination made by reference to the provisions of those other statutes.

Sections 19-701 through 19-707 and Neb. Rev. Stat. § 70-650 (Reissue 2009) are mentioned in § 76-703 and are not applicable to the facts of this case. Section 70-650 applies to electric distribution systems. Sections 19-701 through 19-707

set forth condemnation procedures regarding "any water-works, waterworks system, electric light plant, electric light and power plant, heating plant, street railway, or street railway system." § 19-701. Although gas systems were formerly governed by §§ 19-701 through 19-707, in 2002, the Legislature adopted 2002 Neb. Laws, L.B. 384, creating the Gas System Condemnation Act, thus removing gas systems from §§ 19-701 through 19-707.

Continuing our examination of § 76-703, we note that the Gas System Condemnation Act is mentioned therein, but as explained below, we conclude, as did the district court, that the Gas System Condemnation Act is not applicable to the condemnation procedure and determination of damages in this case. Generally, a city may acquire and appropriate a gas system through eminent domain by following the procedures set forth in the Gas System Condemnation Act. See § 19-4625. However, § 19-4626 sets forth exceptions identifying circumstances when the Gas System Condemnation Act will not apply to a gas system condemnation. Section 19-4626(2), provides: "Nothing in the act shall be construed to govern or affect the manner in which a city which owns and operates its own gas system condemns the property of a utility when such property is brought within the corporate boundaries of the city by annexation." Therefore, § 19-4626(2) provides that the Gas System Condemnation Act does not apply when a city owns and operates its own gas system and the property that is being condemned is within the corporate boundaries of the city by annexation.

In this case, it is not disputed that Hastings owns and operates its own gas system, and the property consisting of gas facilities owned by SourceGas Distribution that are at issue are located in an area that was brought within the corporate boundaries of Hastings by annexation. The language of § 19-4626(2) is unambiguous, and we will give the language its plain and ordinary meaning. *Strasburg v. Union Pacific RR. Co.*, 286 Neb. 743, 839 N.W.2d 273 (2013). Under the plain language of § 19-4626(2), we conclude the district court was correct when it determined that pursuant to § 19-4626(2), the

Gas System Condemnation Act does not apply to this case, and that instead, the general condemnation procedures set forth in chapter 76 apply.

Despite the plain language of § 19-4626(2), SourceGas Distribution asserts that because of differing language between § 19-4626(1) and (2), the exception found at § 19-4626(2) does not apply to this case. SourceGas Distribution reasons that the gas facilities which Hastings seeks to condemn are part of a gas system and that § 19-4626(2) exempts only property that is not part of a gas system. We disagree with SourceGas Distribution's reading of these provisions.

SourceGas Distribution points to § 19-4626(1), which provides:

> A city may condemn *the property of a utility which constitutes a portion of a gas system* without complying with the . . . Gas System Condemnation Act if the condemnation is necessary for the public purpose of acquiring an easement or right-of-way across the property of the utility or is for the purpose of acquiring a portion of the gas system for a public use unrelated to the provision of natural gas service.

(Emphasis supplied.)

SourceGas Distribution contends that the phrase "the property of a utility which constitutes a portion of a gas system" in § 19-4626(1) differs from the phrase "the property of a utility" in § 19-4626(2) and that by using these differing phrases, the Legislature intended the phrase "the property of a utility" in § 19-4626(2) to cover only property that is not "a portion of a gas system." Under the view of SourceGas Distribution, chapter 76 would apply to property that is not a portion of the gas system, but the Gas System Condemnation Act would apply to property that is a portion of a gas system. Applying its interpretation of the statutes, SourceGas Distribution thus contends that the exception in § 19-4626(2) does not exempt Hastings from following the procedures of the Gas System Condemnation Act in this case in which Hasting seeks to condemn the gas facilities at issue, because the gas facilities are in fact a portion of a gas system and § 19-4626(2) does

not exempt such property from application of the Gas System Condemnation Act.

We believe that the difference in the phrases used in § 19-4626(1) and (2) is not meaningful, and we reject SourceGas Distribution's argument. We understand the phrase "the property of a utility" in § 19-4626(2) to include the real and personal property of a utility, and therefore, this phrase anticipates the current case where Hastings is seeking to condemn gas facilities owned by SourceGas Distribution. There is no need to characterize such property as being or not being a portion of a gas system.

The district court essentially determined that Hastings was properly proceeding in county court under chapter 76 and that SourceGas Distribution was not going to succeed on its complaint. We agree with the district court's assessment of the record. Thus, the district court did not err when it denied SourceGas Distribution's motion for temporary injunction and dismissed its complaint.

SourceGas Distribution also claims on appeal that the district court erred in its treatment of its claim challenging the sufficiency of the description of the property that Hastings sought to be appraised in the county court matter. The district court did not explicitly address the issue of the sufficiency of the description in its February 22, 2013, order. We agree with the district court that it is premature to address this issue in this case. Thus, we find no error in this regard and we do not comment on the sufficiency of the description. See *Brodine v. State*, 180 Neb. 433, 143 N.W.2d 361 (1966) (in matter which commenced in county court, affirming district court's order affirming appraisers' award and finding that description of property in pleading and accompanying map were sufficiently accurate).

## CONCLUSION

We find no merit to the assigned errors. The district court correctly concluded that pursuant to the exception set forth in § 19-4626(2), the Gas System Condemnation Act does not apply and, instead, the general condemnation procedures of

chapter 76 apply. This determination of law controls the outcome of this case, and we therefore determine that the district court did not err when it denied SourceGas Distribution's motion for temporary injunction and dismissed its complaint.

Affirmed.

———————

State of Nebraska, appellee, v.
Danny R. Robinson, Jr., appellant.
___ N.W.2d ___

Filed March 7, 2014.    No. S-13-306.

1. **Jurisdiction: Appeal and Error.** An appellate court determines a jurisdictional question that does not involve a factual dispute as a matter of law.
2. **Postconviction: Appeal and Error.** In appeals from postconviction proceedings, an appellate court independently resolves questions of law.
3. **Effectiveness of Counsel: Appeal and Error.** A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.
4. **Postconviction: Final Orders.** Within a postconviction proceeding, an order granting an evidentiary hearing on some issues and denying a hearing on others is a final order as to the claims denied without a hearing.
5. **Postconviction.** The Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2008), provides that postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his constitutional rights such that the judgment was void or voidable.
6. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.
7. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. A court may address the two prongs of this test, deficient performance and prejudice, in either order.
8. **Effectiveness of Counsel: Proof: Words and Phrases.** In addressing the "prejudice" component of the test in *Strickland v. Washington*, 466 U.S. 668, 104 S.