DMK Biodiesel, LLC, a Nebraska limited liability
company, and Lanoha RVBF, LLC, a Nebraska
limited liability company, appellants, v.
John McCoy et al., appellees.

___ N.W.2d ___

Filed March 6, 2015.    No. S-14-150.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower
   court's grant of summary judgment if the pleadings and admitted evidence show
   that there is no genuine issue as to any material facts or as to the ultimate infer-
   ences that may be drawn from those facts and that the moving party is entitled to
   judgment as a matter of law.
2. ____: ____. In reviewing a summary judgment, the court views the evidence in
   the light most favorable to the party against whom the judgment was granted
   and gives such party the benefit of all reasonable inferences deducible from
   the evidence.
3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law.
   When reviewing questions of law, an appellate court resolves the questions inde-
   pendently of the conclusions reached by the trial court.
4. **Securities Regulation.** The Securities Act of Nebraska should be liberally con-
   strued to afford the greatest possible protection to the public.
5. **Statutes: Appeal and Error.** Absent a statutory indication to the contrary, an
   appellate court gives words in a statute their ordinary meaning.
6. ____: ____. An appellate court will not read into a statute a meaning that is
   not there.
7. **Securities Regulation.** Reliance is not an element of an investor's claim against
   the seller of a security under Neb. Rev. Stat. § 8-1118(1) (Reissue 2012).
8. ____. A buyer's sophistication is irrelevant to a claim under Neb. Rev. Stat.
   § 8-1118(1) (Reissue 2012).

Appeal from the District Court for Buffalo County: John
P. Icenogle, Judge. Reversed and remanded for further
proceedings.

David A. Domina and Megan N. Mikolajczyk, of Domina
Law Group, P.C., L.L.O., for appellants.

Daniel L. Lindstrom and Nicholas R. Norton, of Jacobsen,
Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellees John
McCoy et al.

L. Steven Grasz, Mark D. Hill, and Michael Schmidt,
of Husch Blackwell, L.L.P., for appellee Renewable Fuels
Technology, LLC.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Stephan, J.

DMK Biodiesel, LLC (DMK), and Lanoha RVBF, LLC (Lanoha), filed suit against John McCoy; John Hanson; Phil High; Jason Anderson (collectively the individual defendants); and Renewable Fuels Technology, LLC (Renewable), alleging the fraudulent sale of securities, in violation of Neb. Rev. Stat. § 8-1118(1) (Reissue 2012). This is the second appeal. In the first appeal, we reversed the district court's order granting a motion to dismiss because the court considered matters outside the pleadings without conducting an evidentiary hearing.[1] On remand, Renewable and the individual defendants filed motions for summary judgment, which the district court sustained after conducting an evidentiary hearing. DMK and Lanoha now appeal. We reverse, and remand for further proceedings.

## I. BACKGROUND

Republican Valley Biofuels, LLC (RVBF), issued a confidential private placement memorandum (PPM) with an effective date of May 7, 2007, seeking investors in a biodiesel production facility. RVBF was promoted by the individual defendants, and Renewable was the manager of RVBF. The PPM provided that the securities being offered were "speculative and involve a high degree of risk." It included a summary of the offering describing RVBF and the biodiesel facility RVBF proposed to build, as well as a description of "[r]isk factors" involved in the investment. The PPM provided that "[n]o person has been authorized to make any representation or warranty, or give any information, with respect to RVBF or the units offered hereby except for the information contained herein." The PPM also stated that

> [a]lthough we believe that our plans and objectives reflected in or suggested by such forward-looking statements are reasonable, we may not achieve such plans

---

[1] *DMK Biodiesel v. McCoy*, 285 Neb. 974, 830 N.W.2d 490 (2013).

or objectives. Actual results may differ from projected results. We will not update forward-looking statements even though we may undergo changes in the future.

In August 2007, DMK and Lanoha entered into separate subscription agreements and became minority investors in RVBF. In the agreements, each acknowledged the investments involved a high degree of risk. They further acknowledged they had sufficient knowledge and experience in financial and business matters to be able to evaluate "the merits and risks involved" in the investments. Each agreement states: "Subscriber has relied solely upon the information furnished in the [PPM] and Subscriber has not relied on any oral or written representation or statement, except as contained in the [PPM], in making this investment."

In 2009, DMK and Lanoha brought an action against Renewable and the individual defendants in the district court for Buffalo County. In their operative complaint, they alleged that Renewable and the individual defendants, acting in concert as members and the manager of RVBF, made false oral representations and omissions in connection with RVBF and the proposed biodiesel facility which induced their investment. DMK and Lanoha asserted these actions violated the Securities Act of Nebraska (the Act)[2] and violated fiduciary duties owed by the members and manager of RVBF. DMK and Lanoha further sought an accounting at law.

Renewable and the individual defendants filed motions to dismiss, which the district court sustained. DMK and Lanoha appealed, and we reversed.[3]

After the district court entered a judgment on the appeal mandate, Renewable and the individual defendants filed motions for summary judgment asserting they were not liable to DMK and Lanoha as a matter of law. The district court held an evidentiary hearing, after which it sustained the motions and dismissed the action. The court assumed for purposes of

---

[2] See Neb. Rev. Stat. § 8-1101 et seq. (Reissue 2012 & Cum. Supp. 2014).

[3] See *DMK Biodiesel, supra* note 1.

its ruling that Renewable and the individual defendants "made the oral representations alleged by [DMK and Lanoha] during the period of time that [DMK and Lanoha] were contemplating their investment." The court framed the issue as whether the "cause of action for security fraud [based on] misrepresentations made to investors is viable given the contents of the [PPM] and subscription agreements in which [DMK and Lanoha] acknowledge[d] that their investments were made without consideration of any representation not contained in the [PPM] or Subscription Agreements." The court reasoned that DMK and Lanoha were sophisticated investors and that given the contents of the PPM and subscription agreements, they could not have relied upon any oral representations as a matter of law. The court concluded:

[W]hen the sophisticated investor executes a subscription document stating that the "Subscriber has relied solely upon the information furnished in the [PPM] and Subscriber has not relied on any oral or written representation or statement, except as contained in the [PPM], in making this investment" the investor should be held to that statement.

DMK and Lanoha filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

DMK and Lanoha assign, restated and consolidated, that the district court erred when it (1) concluded that there were no genuine issues of material fact; (2) concluded that Renewable and the individual defendants were entitled to summary judgment as a matter of law; (3) failed to find that § 8-1118(5) invalidates provisions of the subscription agreements; and (4) failed to recognize that § 8-1118 is applicable to all situations in which a false or misleading statement is made, regardless of the level of sophistication of the investors.

## III. STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts

or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4]

[2] In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[5]

[3] Statutory interpretation presents a question of law.[6] When reviewing questions of law, an appellate court resolves the questions independently of the conclusions reached by the trial court.[7]

## IV. ANALYSIS

### 1. § 8-1118(1) CLAIM

[4] DMK and Lanoha claim Renewable and the individual defendants violated § 8-1118(1) by selling a security by means of any untrue statement of material fact. Section 8-1118(1) is part of the Act which is modeled after the 1956 Uniform Securities Act.[8] The Act should be liberally construed to afford the greatest possible protection to the public.[9] The purpose of the Act is to protect the public from fraud and to benefit purchasers as opposed to sellers.[10] According to § 8-1118:

---

[4] *Young v. Govier & Milone*, 286 Neb. 224, 835 N.W.2d 684 (2013); *Selma Development v. Great Western Bank*, 285 Neb. 37, 825 N.W.2d 215 (2013).

[5] *Dresser v. Union Pacific RR. Co.*, 282 Neb. 537, 809 N.W.2d 713 (2011); *Radiology Servs. v. Hall*, 279 Neb. 553, 780 N.W.2d 17 (2010).

[6] *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012); *Village of Hallam v. L.G. Barcus & Sons*, 281 Neb. 516, 798 N.W.2d 109 (2011).

[7] *Village of Hallam, supra* note 6; *Shepherd v. Chambers*, 281 Neb. 57, 794 N.W.2d 678 (2011).

[8] See *Hooper v. Freedom Fin. Group*, 280 Neb. 111, 784 N.W.2d 437 (2010). See, also, *Knoell v. Huff*, 224 Neb. 90, 395 N.W.2d 749 (1986) (Grant, J., dissenting; Boslaugh and Hastings, JJ., join).

[9] *Hooper, supra* note 8; *Labenz v. Labenz*, 198 Neb. 548, 253 N.W.2d 855 (1977).

[10] *Loewenstein v. Midwestern Inv. Co.*, 181 Neb. 547, 149 N.W.2d 512 (1967).

(1) Any person who offers or sells a security in violation of section 8-1104 or offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they are made not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he or she did not know and in the exercise of reasonable care could not have known of the untruth or omission, shall be liable to the person buying the security from him or her, who may sue either at law or in equity . . . .

We have few cases construing or applying this statute. In the most recent of these, *Hooper v. Freedom Fin. Group*,[11] we affirmed a judgment determining that directors and a holding company of a broker-dealer which sold securities by means of untrue statements of material fact were liable to investors. In our opinion, we noted that the evidence established the stock in question was sold by means of untrue statements and that the purchasers "were unsophisticated investors who relied upon" the seller's assurances that the stock was as described in a sales pamphlet, notwithstanding the pamphlet's inconsistencies with the offering memorandum.[12] However, we were not called upon in that case to determine whether reliance upon the alleged misrepresentation was an element of an investor's claim under § 8-1118(1) or whether the investor's degree of sophistication was relevant to the claim. Nor have we considered whether exculpatory statements contained in a PPM or a subscription agreement operate as a bar to a claim under § 8-1118(1). Those issues are before us here.

### (a) Reliance

[5,6] To determine whether reliance is an element of a claim under § 8-1118(1), we begin by examining the language of the statute, utilizing familiar principles of statutory construction. Absent a statutory indication to the contrary, an

---

[11] *Hooper, supra* note 8.

[12] *Id*. at 122, 784 N.W.2d at 446.

appellate court gives words in a statute their ordinary meaning.[13] An appellate court will not read into a statute a meaning that is not there.[14] The Legislature has provided an additional tool to determine the meaning of the Act by directing that it "shall be construed as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of the [A]ct with the related federal regulation."[15]

As noted, the Act is modeled after the 1956 Uniform Securities Act.[16] Section 8-1118(1) is patterned after § 410(a) of the 1956 Uniform Securities Act,[17] which in turn "is almost identical with § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*[(a)](2)."[18]

The Act imposes liability upon one who (1) "offers or sells a security," (2) "by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they are made not misleading," and where the buyer is (3) "not knowing of the untruth or omission."[19] It permits the seller to avoid liability by sustaining "the burden of proof that he or she did not know and in the exercise of reasonable care could not have known of the untruth or omission."[20]

---

[13] *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013); *Mutual of Omaha Bank v. Murante*, 285 Neb. 747, 829 N.W.2d 676 (2013).

[14] *Kerford Limestone Co. v. Nebraska Dept. of Rev.*, 287 Neb. 653, 844 N.W.2d 276 (2014); *SourceGas Distrib. v. City of Hastings*, 287 Neb. 595, 844 N.W.2d 256 (2014).

[15] § 8-1122.

[16] See *Hooper, supra* note 8. See, also, Seth E. Lipner et al., Securities Arbitration Desk Reference, 2014-2015 ed. § 16.1 (Securities Law Handbook Series 2014).

[17] Unif. Securities Act § 410(a) (1956), 7C U.L.A. app. I (2006).

[18] *Id.*, comment, cl. (2), 7C U.L.A. at 889. See, also, 12A Joseph C. Long & Philip B. Feigin, Blue Sky Law § 9:2 (2014).

[19] § 8-1118(1).

[20] *Id.*

Thus, the statute contains no explicit requirement that an investor must prove reliance upon an alleged misrepresentation or omission by the seller in order to recover. The question is whether the phrase "by means of" implicitly requires a showing that the investor relied upon the seller's misrepresentation or omission of material fact.

Various courts have held that similar language in § 12(2) of the Securities Act of 1933 does not implicitly require an element of reliance. In *Sanders v. John Nuveen & Co., Inc.*,[21] the Seventh Circuit stated that "[a]lthough the 'by means of' language . . . requires some causal connection between the misleading representation or omission and plaintiff's purchase . . . [i]t is well settled that § 12(2) imposes liability without regard to whether the buyer relied on the misrepresentation or omission." Other federal courts have likewise held that reliance upon misrepresentations or omissions is not an element of a claim under § 12(2) of the Securities Act of 1933.[22] In this regard, a claim under this section of the Securities Act of 1933 differs from a claim under rule 10b-5 of the Securities and Exchange Commission's regulations,[23] derived from § 78j of the Securities Exchange Act of 1934,[24] which rule also addresses securities fraud but has been held to include an element of reliance by the investor upon the alleged fraudulent statement.[25]

Most courts construing state laws derived from § 410(a) of the 1956 Uniform Securities Act have similarly concluded that an investor does not need to prove reliance upon an untrue

---

[21] *Sanders v. John Nuveen & Co., Inc.*, 619 F.2d 1222, 1225 (7th Cir. 1980).

[22] See, e.g., *MidAmerica Federal S & L v. Shearson/American Exp.*, 886 F.2d 1249 (10th Cir. 1989); *Gilbert v. Nixon*, 429 F.2d 348 (10th Cir. 1970); *Johns Hopkins University v. Hutton*, 422 F.2d 1124 (4th Cir. 1970); *In re Phar-Mor, Inc. Litigation*, 848 F. Supp. 46 (W.D. Pa. 1993).

[23] 17 C.F.R. § 240.10b-5 (2014).

[24] See 15 U.S.C. § 78a et seq. (2012).

[25] See, *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008); *Ross v. Bank South, N.A.*, 885 F.2d 723 (11th Cir. 1989).

statement or omission of material fact in order to recover.[26] In reaching this conclusion, the Utah Supreme Court noted that its holding was "in accord with a significant majority of other courts' interpretations of statutes which, like [the Utah Uniform Securities Act], were modeled after section 410(a)(2) of the Uniform Securities Act or section 605(a) of the Uniform Revised Securities Act."[27] The draftsmen's commentary to § 410(a) of the 1956 Uniform Securities Act is consistent with these cases. According to the commentary, "[t]he 'by means of' clause . . . is not intended as a requirement that the buyer prove *reliance* on the untrue statement or the omission."[28]

A few courts have reached contrary conclusions, holding that reliance is an element of an investor's claim under state blue sky laws. For example, a Washington appellate court has construed Washington's antifraud statute to require reliance as an element of an investor's claim.[29] But unlike the Nebraska statute, the Washington statute was patterned after

---

[26] See, *Dunn v. Borta*, 369 F.3d 421 (4th Cir. 2004) (construing Virginia Securities Act); *Carothers v. Rice*, 633 F.2d 7 (6th Cir. 1980) (construing Kentucky's Blue Sky Law); *Alton Box Bd. Co. v. Goldman, Sachs Co.*, 560 F.2d 916 (8th Cir. 1977) (construing Missouri Securities Law); *Forrestal Village, Inc. v. Graham*, 551 F.2d 411 (D.C. Cir. 1977) (construing District of Columbia Securities Act), *abrogated on other grounds, Lampf v. Gilbertson*, 501 U.S. 350, 111 S. Ct. 2773, 115 L. Ed. 2d 321 (1991); *Adams v. Hyannis Harborview, Inc.*, 838 F. Supp. 676 (D. Mass. 1993) (construing Massachusetts Blue Sky Law); *Comeau v. Rupp*, 810 F. Supp. 1127 (D. Kan. 1992) (construing Kansas Securities Act); *Green v. Green*, 293 S.W.3d 493 (Tenn. 2009); *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 809 N.E.2d 1017 (2004); *Connecticut Nat. Bank v. Giacomi* et al., 242 Conn. 17, 699 A.2d 101 (1997); *Gohler v. Wood*, 919 P.2d 561 (Utah 1996); *Esser Distributing Co. v. Steidl*, 149 Wis. 2d 64, 437 N.W.2d 884 (1989); *Everts v. Holtmann*, 64 Or. App. 145, 667 P.2d 1028 (1983); *Arnold v. Dirrim*, 398 N.E.2d 426 (Ind. App. 1979); *Bradley v. Hullander*, 272 S.C. 6, 249 S.E.2d 486 (1978). See, also, David O. Blood, *There Should Be No Reliance in the "Blue Sky,"* 1998 BYU L. Rev. 177 (1998); 12A Long & Feigin, *supra* note 18, § 9:117.13.

[27] *Gohler, supra* note 26, 919 P.2d at 566.

[28] Louis Loss, Commentary on the Uniform Securities Act 148 (1976) (emphasis in original).

[29] *Guarino v. Interactive Objects, Inc.*, 122 Wash. App. 95, 86 P.3d 1175 (2004).

the Securities Exchange Act of 1934, and the court applied reliance principles drawn from that act and the related regulation commonly known as rule 10b-5. A Georgia appellate court reached the same result in interpreting a state statute patterned after the Securities Exchange Act of 1934.[30]

[7] Based upon the plain language of § 8-1118(1), its relationship to § 410(a)(2) of the 1956 Uniform Securities Act, and § 12(2) of the Securities Act of 1933, and the weight of case law interpreting similar state statutes, we hold that reliance is not an element of an investor's claim against the seller of a security under § 8-1118(1).

### (b) Sophistication of Investor

It is undisputed that DMK and Lanoha were sophisticated investors at the time of their investment in RVBF. DMK and Lanoha contend that for purposes of establishing liability under § 8-1118(1), their level of sophistication does not matter. However, the district court found this fact to be of significance, reasoning that while there may be a rationale for allowing redress to an unsophisticated investor who relies upon oral representations which are contrary to a written prospectus, "in a situation in which a sophisticated investor has been fully advised of the risks of the potential investment and then hears 'contrary' statements about the issue of the risk one would [expect] he would fully investigate and require documentation as to the inconsistencies." While there is logic to this reasoning, the plain language of § 8-1118(1) does not differentiate between sophisticated and unsophisticated investors or impose a duty of investigation or inquiry upon any potential investor confronted with inconsistencies between written and oral representations by the seller of the security.

The only phrase in the statute dealing with the investor's knowledge at the time of the alleged misrepresentation is "the buyer not knowing of the untruth or omission."[31] Courts construing similar language in § 12(2) of the Securities Act of 1933 and state statutes derived from § 410(a)(2) of the 1956

---

[30] *Keogler v. Krasnoff*, 268 Ga. App. 250, 601 S.E.2d 788 (2004).

[31] § 8-1118(1).

Uniform Securities Act have held that it bars recovery only when an investor has "actual knowledge that a representation is false or knows that existing information has been withheld."[32] Courts have held that constructive knowledge is not a bar to a claim under § 12(2) and similar state laws[33] and that the statutory language does not impose a duty on any investor to investigate or verify statements made by the seller of a security.[34] Rejecting an argument that investors had an affirmative duty to discover the truth of misrepresentations and omissions with regard to an investment, an Indiana appellate court construing a statute similar to § 8-1118(1) reasoned:

> [I]f the legislature had intended to impose a duty of investigation upon the buyer, it would have expressly included such in the working of the statute. The proscriptions of [the Indiana statute], however, embrace a fundamental purpose of substituting a policy of full disclosure for that of caveat emptor. That policy would not be served by imposing a duty of investigation upon the buyer.[35]

[8] We agree with this reasoning and with the conclusion of other courts and commentators that a buyer's sophistication is irrelevant to a claim under § 12(2) of the Securities Act of 1933 and similar state statutes.[36] As one court put it, "Section 12(2) [of the Securities Act of 1933] does not establish a graduated scale of duty depending upon the sophistication and

---

[32] *Wright v. National Warranty Co.*, 953 F.2d 256, 262 (6th Cir. 1992). See, also, *MidAmerica Federal S & L, supra* note 22; *Sanders, supra* note 21; *In re Olympia Brewing Co. Securities Litigation*, 612 F. Supp. 1367 (N.D. Ill. 1985); *Marram, supra* note 26; 12A Long & Feigin, *supra* note 18, § 9:31.

[33] *Dunn, supra* note 26; *MidAmerica Federal S & L, supra* note 22; *Marram, supra* note 26; 12A Long & Feigin, *supra* note 18, § 9:130.

[34] *Dunn, supra* note 26; *MidAmerica Federal S & L, supra* note 22; *In re Olympia Brewing Co. Securities Litigation, supra* note 32; *Marram, supra* note 26. See, also, *Bradley, supra* note 26; 12A Long & Feigin, *supra* note 18, § 9:32.

[35] *Kelsey v. Nagy*, 410 N.E.2d 1333, 1336 (Ind. App. 1980).

[36] See, *Wright, supra* note 32; *Marram, supra* note 26; 12A Long & Feigin, *supra* note 18, § 9:31.

access to information of the customer."[37] The same is true of § 8-1118(1).

### (c) Exculpatory Provisions

The district court also concluded that DMK and Lanoha should be held to the affirmation in their subscription agreements that they had not relied on any oral or written representation or statement except those contained in the PPM. DMK and Lanoha argue that this was error, because § 8-1118(5) provides that "[a]ny condition, stipulation, or provision binding any person acquiring any security or receiving any investment advice to waive compliance with any provision of the act or any rule or order under the act shall be void." But Renewable and the individual defendants contend the district court's ruling was correct, relying on a federal case holding that "in the law of securities a written disclosure trumps an inconsistent oral statement."[38]

The provision of the PPM upon which Renewable and the individual defendants, as well as and the district court, relied is sometimes referred to as an "integration clause." The Supreme Judicial Court of Massachusetts considered whether an integration clause in a subscription agreement barred an action under a Massachusetts statute similar to § 8-1118(1) based upon alleged oral misrepresentations and omissions by the seller of a security. Reasoning that reliance and sophistication of the buyer are not elements of the statutory claim, the court concluded that "the existence of contradictory written statements, in an integration clause or otherwise, does not provide a defense to the charge of preinvestment materially misleading oral statements."[39] The court determined that a section of the Massachusetts statute which prohibited any party from waiving compliance with its provisions further supported its conclusion that the integration clause did not bar the statutory claim.

---

[37] *Sanders, supra* note 21, 619 F.2d at 1229.

[38] *Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1322 (7th Cir. 1988).

[39] *Marram, supra* note 26, 442 Mass. at 55, 809 N.E. at 1028.

In *MidAmerica Federal S & L v. Shearson/American Exp.*,[40] the 10th Circuit Court of Appeals held that a securities dealer could be held liable to an investor under an Oklahoma statute similar to § 8-1118(1) for oral misrepresentations by one of its brokers, even though correct information was furnished in prospectuses later sent to the investor. The court distinguished the holding in *Acme Propane, Inc. v. Tenexco, Inc.*,[41] that a written disclosure trumps an inconsistent oral statement, upon which Renewable and the individual defendants rely, noting that the court in that case was dealing with a liability claim under rule 10b-5, whereas §12(2) of the Securities Act of 1933, upon which the Oklahoma statute was based, "dictates a different outcome."[42] The court in *MidAmerica Federal S & L* reasoned that unlike liability claims under rule 10b-5, § 12(2) "has no requirement of justifiable reliance on the part of a purchaser" and that the "purchaser's investment sophistication is immaterial."[43] The court cited with approval a commentator's observation that "'it is a firmly entrenched principle of § 12(2) that the "[a]vailability elsewhere of truthful information cannot excuse untruths or misleading omissions" by the seller.'"[44]

Because we have concluded that reliance is not an element of a claim under § 8-1118(1) and the sophistication of the investor is irrelevant to such claim, we conclude that the district court erred in determining that the integration clauses in the subscription agreements executed by DMK and Lanoha bar their claims under § 8-1118(1).

---

[40] *MidAmerica Federal S & L, supra* note 22.

[41] *Acme Propane, Inc., supra* note 38.

[42] *MidAmerica Federal S & L, supra* note 22, 886 F.2d at 1256.

[43] *Id.*

[44] *Id.* at 1256-57, quoting Martin I. Kaminsky, *An Analysis of Securities Litigation Under Section 12(2) and How It Compares With Rule 10b-5*, 13 Hous. L. Rev. 231 (1976) (quoting *Dale v. Rosenfeld*, 229 F.2d 855 (2d Cir. 1956)).

### (d) Summary

We conclude that the district court erred in entering summary judgment with respect to the § 8-1118(1) claim of DMK and Lanoha. There remain genuine issues of material fact concerning whether the alleged misrepresentations and omissions of material fact were made, the nature of such misrepresentations and omissions, and whether DMK and Lanoha had actual knowledge of the true facts which they allege to have been misrepresented or omitted.

## 2. Other Issues

### (a) Exhibits 12 Through 20

Renewable and the individual defendants argue that exhibits 12 through 20 were not received in evidence at the summary judgment hearing and should not be considered on appeal. The exhibits in question were offered by DMK and Lanoha over objections which were not ruled on at the hearing or, as far as we can tell, subsequent thereto. We have not considered these exhibits in our analysis of this appeal.

### (b) Motion to Strike

Following oral argument of this appeal, Renewable and the individual defendants filed a motion to strike statements made by DMK and Lanoha's counsel during oral argument as not supported by the record. Because we have not relied upon such statements, we do not consider whether or not they are supported by the record and overrule the motion as moot.

### (c) Motion for Attorney Fees

At the same time DMK and Lanoha filed their opening brief on appeal, they also filed a motion for attorney fees pursuant to that portion of § 8-1118(1) which permits a party seeking to impose liability on a seller of securities to "sue either at law or in equity to recover the consideration paid for the security, together with interest at six per cent per annum from the date of payment, costs, and reasonable attorney's fees." We read the statute to permit an award of attorney fees as a part of a judgment on the merits of the liability claim.

That has not occurred in this case. Although DMK and Lanoha have prevailed on this appeal, they have yet to prove and obtain a judgment on their liability claim under § 8-1118(1). Accordingly, we overrule their motion for attorney fees without prejudice.

## V. CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.

Wright, J., not participating.

————————————

Professional Firefighters Association of Omaha,
Local 385, AFL-CIO CLC, et al., appellants,
v. City of Omaha, Nebraska, a municipal
corporation, appellee.
___ N.W.2d ___

Filed March 6, 2015.    Nos. S-14-230, S-14-375, S-14-627.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. **Statutes: Judgments: Appeal and Error.** The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.

3. **Commission of Industrial Relations: Final Orders: Contracts.** When Nebraska's Commission of Industrial Relations enters a final order setting wages, hours, and terms and conditions of employment which are binding on the employer, the order is, in every sense, a contract between the parties.

4. **Municipal Corporations: Public Officers and Employees: Ordinances.** City ordinances related to how city employees should be paid are agreements by the city to follow the ordinances and pay employees at the relevant rates.

5. **Actions: Employer and Employee: Wages: Attorney Fees: Case Disapproved: Appeal and Error.** To the extent *Brockley v. Lozier Corp*., 241 Neb. 449, 488 N.W.2d 556 (1992), authorizes two attorney fee awards under the Nebraska Wage Payment and Collection Act to an employee who is unsuccessful at the trial court level but successful on appeal, it is disapproved.